## MALLORY *v.* STATE.

### Opinion delivered January 12, 1920.

1. JURY—FIXED OPINION AS DISQUALIFICATION.—Veniremen who testified on their *voir dire* that they had each formed a fixed opinion as to defendant's guilt, based upon statements made by persons not witnesses who professed to relate the facts as they occcurred, and that it would require testimony to remove or change their respective opinions, but that they could and would disregard such opinions and try the case according to the law and evidence, were competent as jurors.

2. JURY—QUALIFICATION AS ELECTOR.—It was not error to accept a veniremen who testified on September 27, 1919, that he was 22 years old and had never paid a poll tax, where it does not appear when he became of age, as he may have just reached that age, in which case he was not delinquent in paying his poll tax.

3. CRIMINAL LAW—INSTRUCTION.—A verbal statement of a special judge that "The county has been put to an enormous cost in trying this case. * * * I expect to sit until you reach a verdict" —*held* not a threat but an admonition of the ills attendant upon disagreement, with assurance that ample time would be given for deliberation.

4. HOMICIDE—EVIDENCE OF MOTIVE.—In a prosecution for murder, where defendant was permitted to testify that he sought deceased for an explanation of a difficulty, he was not prejudiced by a refusal to allow him to go into further detail concerning his motive.

5. CRIMINAL LAW—RES GESTAE—SELF-SERVING DECLARATIONS.—Evidence that defendant told the officer immediately after he was arrested that he had a pistol at the time he stabbed deceased but did not use it was incompetent, being too remote to constitute part of *res gestae* and also being a self-serving declaration.

6. CRIMINAL LAW—INSTRUCTIONS CONSIDERED AS A WHOLE.—The objection that an instruction on self-defense omitted to tell the jury to consider the facts as they appeared to defendant was met where other instructions covered that point.

7. HOMICIDE—FAILURE TO CHARGE AS TO ASSAULT.—It was not error to refuse to charge upon the law of assault in a homicide case where defendant was guilty of manslaughter or nothing.

Appeal from St. Francis Circuit Court; *J. M. Jackson,* Judge; affirmed.

*R. J. Williams* and *M. B. Norfleet, Jr.,* for appellant.

1. It was error for the court to hold that Tom Hampton, Jesse Pharr and C. E. Phillips were compe-

tent jurors. They had expressed opinions on the case and were disqualified as jurors. 45 Ark. 170; Const., art. 2, § 10.

2. The court erred in giving the State's instructions and by the refusal of the one asked by defendant as to what constituted an assault.

3. Defendant was prejudiced by the charge of Special Judge J. Walker Morrow.

4. It was error to refuse appellant the right to show why he was seeking the deceased, Connerly. 43 S. E. 230.

5. It was error to refuse to permit defendant to tell what he said to Mr. Lacefield after he was placed in jail. It was part of the *res gestae.* 43 Ark. 99; *Ib.* 289; 1 Greenl. on Ev., § § 108, 111; Wharton, Cr. Ev., § § 262, 270; 43 Ark. 103.

6. The jurors rejected were duly qualified. Kirby & Castle's Digest, § § 5217-18; Const. Amend. No. 9, art. 28; 68 Ark. 464.

7. It was error to refuse instruction No. 1 for defendant. 11 Pickle (Tenn.), 137.

8. It was lawful for defendant to show his purpose in seeking deceased or in going to the scene of the homicide. 52 W. Va. 132; 43 S. E. 230; 22 Mont. 92; 55 Pac. 927; 26 Tex. 107. Defendant's purpose was lawful. *Supra.* Statements of deceased reflecting upon the character of defendant and his female relatives are admissible in his behalf as to his motive. 15 Ky. L. Rep. 562; 24 S. W. 611; 26 *Id.* 201.

9. It was error to give No. 3 for the State. It is misleading, argumentative and ambiguous. 6 Mo. App. 592; 8 Peters 399; 24 Cal. 14; 5 Nev. 337.

10. The verbal remarks of Special Judge Morrow were prejudicial. 117 Ark. 81.

11. Instructions as to the lower grade of homicide should have been given. 36 Kan. 187; 105 Mo. 38; 1 Tex. App. 225; 98 Mo. 150; 13 Ky. Law Rep. 313; 73 Mo. 592.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1.   There was no proper bill of exceptions.   84 Ark. 241; 103 *Id.* 21; 47 *Id.* 180; 79 *Id.* 127.

2.   It is not necessary to be an elector to be a qualified juryman in Arkansas, as the statute is silent as to qualifications of petit jurors.

3.   No error in giving instruction No. 3.   74 Ark. 431; 62 *Id.* 286; 109 *Id.* 475; 93 *Id.* 409.

4.   No error in instruction or statement of the special judge.   98 Ark. 83; 111 *Id.* 272; 134 *Id.* 528.

5.   No error in refusing defendant the right to testify as to his purpose in seeking the deceased.   It was immaterial.

6.   No error in refusing to let defendant testify what he told the deputy sheriff after he was in jail.   The statements were too remote to be *res gestae.*

HUMPHREYS, J.   Appellant was indicted and tried in the St. Francis Circuit Court for murder in the first degree for killing James Connerly in the courthouse yard at Forrest City.   The trial resulted in a conviction for manslaughter and a sentence, as punishment therefor, to the State penitentiary for seven years.   From the judgment of conviction an appeal has been duly prosecuted to this court.   In the formation of the jury to try appellant, Tom Hampton, Jesse Pharr and C. E. Phillips, on their *voir dire,* testified severally, in substance, that each had formed, expressed, and had a fixed opinion as to the appellant's guilt, which had been formed from statements made by parties who professed to relate the facts as they occurred, and that it would require testimony to remove or change their respective opinions.   In response to the questions propounded by the court, each testified that he could and would disregard the opinion and try the case according to the law and evidence, or, at least, each thought he could.   Wm. Billingsley, another venireman, testified, on September 27, 1919, that he was 22 years of age and had never paid a poll tax.   The court held each

of the veniremen qualified, over the objection and exception of appellant, and he was compelled to exhaust his peremptory challenges in challenging them, and, on this account was prevented from peremptorily challenging Ed Clegg, who qualified as a juror.

On Sunday morning, May 25, 1919, between eight and nine o'clock, James Connerly had a difficulty with Emmett Mallory, appellant's uncle, at Crawford's restaurant in Forrest City. They both left the restaurant, Emmett Mallory leaving first. A short time thereafter, appellant and Reuben Mallory came to the restaurant and inquired for James Connerly. Not finding him, they went to the depot, from which place they were taken, by request, in Will Dooley's car, to Dr. Aldridge's residence where Connerly frequently visited. In the meantime, Connerly had been arrested and placed in the custody of George Dooley in the courthouse yard, while the officer who arrested him went to arrest Emmett Mallory.

According to the State's evidence, Connerly was sitting on an urn in the courthouse yard near his custodian, Dooley, when appellant, in company with Reuben Mallory, came hurriedly into the courtyard and approached Connerly. After they passed Dooley, he observed a knife in appellant's hand. Appellant said something to Connerly about abusing an old man and cursed him. Dooley hallooed to him to stop, but, notwithstanding, appellant stabbed Connerly twice while he was raising up and before he got perfectly straight. Dooley grabbed his hand before he struck the third blow, but appellant broke away from Dooley, and, in the renewal of the conflict, both fell to the ground. Others came and assisted in separating the men, and, after both were on their feet, appellant reached around Dooley and cut Connerly in the back. Four knife wounds were found upon Connerly's body—two in front and two behind. One had penetrated the heart. The two front wounds were over four inches in depth. After the antagonists were separated, Connerly walked out of the courtyard into the alley where he soon died.

The evidence on behalf of appellant showed that he, in company with Reuben Mallory, upon hearing of the difficulty between appellant's uncle and Connerly, sought and found him for the purpose of obtaining an explanation of the difficulty. The court ruled that appellant could not show that his purpose in seeking an explanation was to effect a reconciliation between his uncle and Connerly, to which ruling an objection was made and exception saved; that when they found Connerly in the courtyard appellant requested an explanation of the difficulty, whereupon Connerly sprang to his feet and remarked: "I beat him up and I will beat you up, you s— of a b—;" that Connerly attacked him and threw his hand toward his pocket as if to draw a weapon, and appellant cut him twice before Dooley grabbed his hand; that, in a renewal of the conflict, they fell to the ground, and the cuts in the back were made during the scuffle; that appellant had a pistol during the difficulty, which he did not attempt to use. Appellant offered to prove that he told the deputy sheriff, Lacefield, immediately after his arrest and incarceration in the jail, that he had a pistol and did not use it. The court excluded this evidence over the objection and exception of appellant.

After the submission of the case to the jury, it became necessary for the regular judge to leave, and the Honorable J. Walker Morrow was elected special judge to preside in the absence of the regular judge. After the special judge assumed the bench, he sent for the jury, and, being informed that they had not reached a verdict, he read the instructions to them, which had been given by the regular judge, and, in addition, instructed them orally as follows:

"This is an intelligent jury and the county will not get one more so. The county has been put to an enormous cost in trying this case. I was selected to fill the place of the regular judge and I am prepared to do so, and I expect to sit until you reach a verdict. Take the case, gentlemen of the jury." Proper objections and exceptions were saved to the verbal statement.

It is contended that the court committed reversible error in holding Tom Hampton, Jesse Pharr and C. E. Phillips as qualified jurors. The several opinions held by the jurors were not based upon statements made to them by witnesses, so were necessarily formed from rumor or hearsay. Each testified that he could, or thought he could, disregard the opinion and try appellant according to the law and evidence. The record fails to show that either had any bias or prejudice against appellant. These facts being true, it is immaterial whether the several opinions were fixed and that it would take evidence to remove them. It was said in the case of *Jackson* v. *State,* 103 Ark. 169 (syllabus 1): ''A juror is not disqualified in a criminal case by reason of a 'fixed' opinion based upon hearsay testimony or mere rumor, which opinion it would take evidence to remove, where he states that he can go into the jury box and disregard such opinion, and that he had no bias or prejudice for or against the accused.'' It is urged that the court erred in qualifying Wm. Billingsly as a juror because he was not an elector. Under the statutes of this State, a petit juror must be an elector. Kirby's Digest, section 4508. Billingsly testified on September 27, 1919, that he was 22 years of age, and that he had never paid a poll tax. He may have attained to the age of 22 on the date he testified. The record does not disclose anything to the contrary. If this be the case, he attained to the age of 21 after assessing time in 1918, and was not subject to the payment of a poll tax until after assessing time in 1919, and could not have been delinquent until after the expiration of the time for payment of the poll tax assessed against him in 1919. Article 28, Amendment No. 9, of the Constitution of the State of Arkansas of 1874, is as follows: ''Every male citizen of the United States, or male person who has declared his intention of becoming a citizen of the same, of the age of twenty-one years, who has resided in the State twelve months, in the county six months, and in the precinct, town or ward one month, next preceding any election at which he may propose to vote, except such persons as may for the commis-

sion of some felony be deprived of the right to vote by law passed by the General Assembly, and who shall exhibit a poll tax receipt or other evidence that he has paid his poll tax at the time of collecting taxes next preceding such election, shall be allowed to vote at any election in the State of Arkansas. Provided, that persons who make satisfactory proof that they have attained the age of twenty-one years since the time of assessing taxes next preceding said election and possess the other necessary qualifications shall be permitted to vote, and provided further, that the said tax receipt shall be so marked by dated stamp or written endorsement by the judges of election to whom it may be first presented as to prevent the holder thereof from voting more than once at any election.''

Our interpretation of the exemption clause in said amendment is that a minor who becomes of age after assessing time does not have to present evidence or a poll tax receipt showing payment of the poll tax at the time of collecting taxes next preceding the election in order to entitle him to vote at said election. In other words, the exemption relates to the time of assessing and not to the time of payment of taxes, as there is no duty to assess at all until after one has attained to the age of 21, and only then at the regular assessing time. The phrase ''time next preceding for assessing taxes'' in the proviso relates to the time for assessing the tax which was payable next preceding the date when the right to the elective franchise is to be determined, and not literally to the preceding assessing period of a tax which has not become payable under the law. The manifest purpose was to favor those who have just emerged from the disability of minority by exempting them from this requirement as a condition precedent to the exercise of the elective franchise until there has been delinquency in payment of a poll tax which could have been legally assessed; and after a citizen minor comes of full age he is entitled to the franchise until he falls delinquent in the payment of the poll tax legally assessable against him. Billingsley, being

otherwise qualified for jury service, was properly quali-
fied by the court as being an elector under said amend-
ment to the Constitution.

It is insisted that the court committed reversible er-
ror in making the verbal statement to the jury concern-
ing the expense resulting from a disagreement and the
length of the time he was willing to accord to them for
deliberation on the case. We have carefully examined
the statement, and are unable to interpret it a threat or
persuasion to coerce the jury into the rendition of an un-
willing verdict. It was an admonition "of the ills at-
tendant upon a disagreement," an explanation of their
duty to agree upon a verdict, if possible, with the assur-
ance that they would be given ample time to deliberate.
We think the admonition within the rule announced in
*St. L., I. M. & S. R. Co.* v. *Carter,* 111 Ark. 272, and reit-
erated in *Whitley* v. *State,* 114 Ark. 243, and *Reed* v. *Rog-
ers,* 134 Ark. 528.

It is insisted that the court erred in refusing to per-
mit appellant to testify that his motive in seeking an ex-
planation from Connerly of the difficulty between him
and his uncle was to effect a reconciliation between them.
The only object appellant could have in testifying to the
excluded evidence would be to show that he was bent on
a mission of peace. This object was accomplished when
he was permitted to testify that he sought out Connerly
for an explanation of the difficulty. The purpose having
been accomplished, appellant was not prejudiced by the
refusal of the court to allow him to go into further detail
concerning his motive.

It is insisted that the court erred in refusing to per-
mit appellant to testify concerning statements made by
him to the deputy sheriff, after arrest and incarceration,
concerning his pistol. The statements were too remote
in point of time to be a part of the *res gestae.* They were
also incompetent because in the nature of self-serving
declarations.

It is insisted that the court erred in giving instruc-
tion No. 3, which is as follows: "You are instructed that

the law has such a strong regard for the sanctity of human life that one person may not kill another, even in his necessary self-defense, except as a last resort, and when he had done all in his power consistent with his safety to avoid, the danger and avert the necessity of the killing; so in this case if you find from the evidence and circumstances, beyond a reasonable doubt, that the defendant could have reasonably avoided the danger to himself, and averted the necessity of killing the deceased, it was his duty to have done so.'' The vice contended for in the instruction is that it does not tell the jury that they must view the facts as they appeared to appellant. This point was covered by other instructions in the case, and, when all the instructions are read together, the vice contended for in this instruction is eliminated.

Lastly, it is insisted that the court committed reversible error in refusing to give appellant's requested instruction upon the law of assault. It is contended that appellant was entitled to instructions on the lower grade of the offense upon which he was charged. Death ensued from this assault, and, consequently, appellant was guilty of manslaughter or nothing. He was therefore not prejudiced by the refusal to charge the jury as to the law of assault.

No error appearing in the record, the judgment is affirmed.