## REBECCA v. STATE.

### Opinion delivered April 16, 1923.

1. CRIMINAL LAW—EXCLUSION OF EVIDENCE—HARMLESS ERROR.— Where, on a charge of assault with intent to kill, defendant sought to explain his presence at the city jail by showing that he went there for the purpose of carrying a bullet to be used in a trial the next day, it was not prejudicial error to exclude the testimony of a witness that defendant "brought a shot there," as such testimony had no probative force.

2. CRIMINAL LAW—BYSTANDERS' BILL OF EXCEPTIONS—A bill of exceptions verified by affidavits of bystanders, in the absence of controverting affidavits, must be taken as true.

3. CRIMINAL LAW—EXPRESSION OF OPINION BY COURT—SPECIFIC OBJECTION.—A general objection to an ambiguous statement of the court *held* insufficient to point out that it was an expression of opinion on the weight of the testimony.

Appeal from Pulaski Circuit Court, Second Division; R. M. Mann, Judge; affirmed.

Z. M. Longstreth and Neill Bohlinger, for appellant.

Court erred in not permitting witness White to state for what lawful purpose defendant was at the city hall immediately prior to and at the time of the kidnapping of the injured party and in expressing his opinion on the weight of the evidence in sustaining the objections thereto. 110 Ark. 323, 125 N. E.; 190 S. W. 181; 42 Ark. 542; 29 Ark. 406; 67 Ark. 416; 51 Ark. 155; 170 Ark. 472. The affidavits of the bystanders were not controverted and must be taken as a correct statement of the language used by the court. 87 Ark. 461; 87 Ark. 543; 95 Ark. 71.

J. S. Utley, Attorney General, Elbert Godwin and W. T. Hammock, Assistants, for appellee.

No error was committed in refusing to permit witness to state why appellant went to the city hall on the night Johnson was assaulted; neither did appellant disclose what he expected to prove by the witness. Intention to commit the assault could have been formed instantaneously and after appellant went to the city hall. 103 Ark. 28; 141 Ark. 11; 147 Ark. 67. Error committed in court's language refusing to permit the introduction of the testimony, as shown by the affidavits of the bystanders, was not prejudicial and would doubtless have been corrected had specific objection been made. 118 Ark. 49; 134 Ark. 136; 146 Ark. 23.

McCulloch, C. J. Appellant was indicted for the crime of assault with intent to kill, and, on the trial of the cause, he was convicted of aggravated assault, and his punishment fixed at a fine and imprisonment.

The evidence adduced by the State was sufficient to prove that appellant, in concert with twelve or fifteen other men, assaulted B. Y. Johnson, the person named in the indictment, striking and beating him with bare fists and metal knucks, and inflicting serious bodily injuries.

Appellant admitted that he was present when Johnson was assaulted and beaten, but claims that he did not participate in the assault, and was induced by the other men to take the party into his (appellant's) automobile and carry them out to the spot where the beating was done.

Johnson was working for the Missouri Pacific Railroad Company as special guard at the shops in North Little Rock. He was arrested on the charge of assault with intent to kill, and lodged in the city jail. This was early in the evening of July 9, 1922, and in a few hours one of the agents of the Missouri Pacific Railroad Company went to the city hall and furnished bail for Johnson, who informed the agent that he was afraid to leave the jail without some kind of protection—that he was afraid of personal violence from some of the workmen on strike. The agent of the company, Mr. Gannaway, thereupon called up the office of the special agent of the company and instructed him to send a car with some men to get Johnson, so as to afford him protection from assault as he was leaving the city jail, and he instructed the turnkey to lock Johnson up until the agent of the company sent for him.

Mr. Gannaway testified that, when he was talking over the telephone, appellant was sitting in the room, near enough to hear the conversation. Gannaway then left the place, and shortly thereafter a party of men drove up in an automobile, and the turnkey opened the door and informed Johnson that his men were there for him, and Johnson left with them, thinking that they were men from the office of the company's special agent.

There were twelve or fifteen men in the crowd that took Johnson outside of the city limits and administered a severe beating, using, as before stated, their fists and also metal knucks.

Appellant admitted that he was at the city jail when Johnson was there, but claimed that he went there for the purpose of carrying a bullet to be used in a trial the

next day, the bullet having been fired from a pistol or gun. His narrative of the affair, so far as concerned his connection with it, is that a few minutes after the turn-key let Johnson out of jail, he (appellant) left the jail office and went out the back door and got in his car, and that as he drove down one of the streets of the city he passed the place where there were twelve or fifteen people out in the street and a damaged car near by; that the men stopped his car and got in, and told him to drive under their direction; that they put Johnson in the car next to him, and after they got out to the end of the paved streets they gave further directions to him where to drive. He testified that the men left the car, and that he was not present when the beating was administered to Johnson. Johnson testified that he recognized appellant as one of the men in the party. Another witness, one Rawles, who accompanied the party and participated in the beating, testified that the first he knew of the affair was when appellant came to him on the street and asked him (witness) to let him have the use of his car, and that he agreed to that, and appellant told him to drive to the turnkey's office and tell the latter that he (witness) was an officer from the office of the special agent of the Missouri Pacific Railroad Company, and had come for Johnson. He testified that he did this, and that later he met appellant out on the street in his roadster, and after his (witness') car broke down the party was transferred to appellant's car.

There was other testimony tending to show, more or less, that appellant was a participant in the brutal assault on Johnson.

During the progress of the trial appellant introduced as a witness Luther White, the desk-sergeant, or night turnkey at the city jail, who testified that appellant was at the city jail that night, but did not participate in releasing Johnson from jail. He testified that a crowd of persons drove up to the city hall and stated that they had come from the railroad shops, that he

opened the door and told Johnson that the men were there for him, and that Johnson went to the back door and spoke to the men, and got into the car and went off with them. Appellant's attorney asked the witness if he knew why appellant was at the city hall that night, and the witness replied that appellant "brought a shot there." Objection was made by the prosecuting attorney, which was sustained by the court, over appellant's objection, and the ruling of the court in excluding this answer is assigned as error.

Appellant was entitled to show that his presence at the city jail that night was for a purpose other than to participate in the assault upon Johnson, but the bare statement that he "brought a shot there," without any further statement from the witness, was not sufficient to show that. Appellant testified himself that he went to the city hall that night, pursuant to instructions from the chief of police, to bring the shot there for use in the trial, and no objection was made to that testimony, but he did not offer to prove that state of facts by the witness White; on the contrary, he contented himself merely with an attempt to elicit the statement from the witness that he brought the shot there, which amounted to no more than saying that he had this shot when he was there. That bare statement was without any probative force, and its exclusion from the consideration of the jury was not prejudicial.

Error is also assigned concerning the language of the court in sustaining the objection to the testimony we have just discussed. There is a conflict between the certificate of the trial judge, in the bill of exceptions, concerning the language used, and the affidavits of bystanders, which were filed upon refusal of the trial judge to certify the exception as claimed by appellant. The following is the statement of the court, with the word "if" in parenthesis inserted by the trial judge in the bill of exceptions, but omitted from the affidavits of the bystanders:

"Court: I cannot see that that would have anything to do with it (if) he was there for this purpose also, he might have brought the bullet there that he had, but I don't see that that would be competent in any way to prove that he was not there for this purpose also, and, as I understand, that is what you are trying to prove. The objection will be sustained."

The affidavits of bystanders were not controverted, and we are therefore compelled, under the statute, to accept them as a correct statement of the language used by the court. *Wingfield* v. *State,* 95 Ark. 71.

The objection to the court's statement was a general one, and the grounds of the objection were not pointed out. It is urged here that the statement of the court constituted an expression of opinion concerning the weight of the evidence, in stating that appellant was present for the purpose of participating in the assault on Johnson. It is not clear, from the language used, that the court meant to tell the jury that Johnson was there for that purpose. The language is that appellant "was there for this purpose also," but it does not state for what purpose. Being ambiguous, and not a positive statement of fact, the court's attention should have been called to it by a specific objection. If such objection had been made, the court would have had an opportunity to explain to the jury what he meant in language which they could not misunderstand. We are of the opinion therefore that the general objection was not sufficient to raise the question that the language used was an instruction on the weight of the evidence.

These are the only grounds urged for reversal.

Affirmed.