STOCKTON *v.* STATE.

Opinion delivered June 20, 1927.

1. CRIMINAL LAW—REDUCTION OF INSTRUCTIONS TO WRITING.—The inhibition of Const. 1874, art. 7, § 23, against instructing juries orally, relates to declarations of law made by the court, applicable to the particular facts in a given case, and instructions of that character should be reduced to writing by the court when requested.

2. CRIMINAL LAW—CAUTIONARY INSTRUCTIONS.—Cautionary instructions are not supposed to contain declarations of law, but are warnings to the jury to lay aside pride of opinion and consult with each other for the purpose of harmonizing their views, if possible.

3. CRIMINAL LAW—CAUTIONARY INSTRUCTIONS.—In giving a cautionary instruction the court may detail to the jury the ills attendant upon a disagreement, the expense, time taken, and that the case has to be decided by some jury upon the pleadings and probably upon the same testimony.

4. CRIMINAL LAW—LENGTH OF CAUTIONARY INSTRUCTION—REDUCTION TO WRITING.—In a prosecution for forgery, the length of a cautionary instruction *held* in itself to necessitate that it be reduced to writing to prevent possible dispute or misunderstanding as to its exact phraseology and contents.

5. CRIMINAL LAW—CAUTIONARY INSTRUCTIONS.—It was error in a criminal case to give a cautionary instruction, which was not only

long but involved and argumentative and an entreaty to the jury to change their minds and reach a verdict.

6. FORGERY — INCOMPETENCY OF TESTIMONY. — Where the issue involved in a forgery prosecution was whether defendant was specifically authorized by F. to sign his name to a note, refusal to permit defendant to prove by F. that F. had a checking account in the bank, and defendant as cashier honored F.'s checks when overdrawn, and signed his name to F.'s notes, *held* proper, since testimony was on collateral issue calculated to cloud real issue.

7. FORGERY—INSTRUCTION AS TO DEFENDANT'S THEORY.—In a forgery prosecution where defendant was charged with forging another name to a note, he was entitled to an instruction that he was not guilty, as he signed the other's name to the note under the honest belief, without fault or carelessness, that he had authority from the other to do so.

Appeal from Franklin Circuit Court, Ozark District; *J. O. Kincannon*, Judge; reversed.

*J. P. Clayton* and *Evans & Evans*, for appellant.

*H. W. Applegate*, Attorney General, and *Darden Moose*, Assistant, for appellee.

HUMPHREYS, J. Appellant was indicted, tried and convicted for the crime of forgery, in the circuit court of Franklin County, Ozark District, and adjudged to serve a term of two years in the State Penitentiary as a punishment therefor, from which is this appeal.

The assignment of error insisted upon most strenuously for a reversal of the judgment was the giving of a cautionary instruction, orally, by the court, over the objection and exception of appellant. The instruction is as follows:

"Gentlemen of the jury: It is not surprising to the court that twelve men, even though they have listened to the same testimony and the same argument of counsel and to the same instructions of the court, that they do not agree as to what the testimony was and do not agree as to the instructions of the court and to the argument of counsel. In fact, gentlemen, it would be strange if you should go out into your jury-room and immediately all agree upon a verdict. It rarely ever happens that twelve men are of the same opinion at first in trying to

decide any case.  Now, what is the duty of a jury when
they disagree?   It is your duty to keep frank, open
minds, to be frank with your fellow jurors, and listen
to what your fellow jurors say, to see if perchance they
might not be right and you might be wrong, and, when
you are convinced that they are right and you are wrong,
why, you ought not to hesitate to admit that you are
wrong and so in that way arrive at a verdict.   Of course,
if you go into the jury-box with your mind fixed and set,
and you say to yourself, I am right and the others are
wrong, and I will not change my opinion, why, of course
there would be no use in keeping you together any longer,
and I would discharge you.   But a juror ought not to
get into that frame of mind, but he ought to go into the
jury-room with a frank mind and listen to the argument
of his fellow jurors and weigh it, and then, if their argu-
ment does not change his mind and he is still convinced
that he is right, of course, I would not ask him to give
up an honest conscientious opinion simply for the pur-
pose of arriving at a verdict.   I am not asking you to do
that and do not want you to do that.   But if, after hear-
ing the argument of the other members of the jury, he
decides that they are right, he ought not to hesitate to
change his views.   Now, gentlemen, the fact that a man
changes his mind is not evidence that he is a weakling
or a wishy-washy sort of a fellow, but rather an evidence
that he is a thinking human creature.   All the progress
in the world has been brought about by men changing
their minds.   It is the power of reasoning and thinking
that distinguishes us from the lower animals.   The lower
animals do not think, and their condition is the same
that it has always been.   Men do think and change their
minds, and so has risen himself from the savagery in
which he formerly lived to the high state of civilization
which we boast and enjoy today.   All the great inven-
tions have been brought about by men changing their
minds; and so do not get into your heads, gentlemen, that
changing your mind would be an evidence of a weakling.
Some jury in the Ozark District of Franklin County must

decide this case, if it is ever decided. I think you gentle-
men are just as competent to decide this case as any
twelve men I could get. If I did not think so, I would
immediately discharge you and get another jury. But
I know you twelve men can decide this case just as well
as any other jury. This litigation is expensive both to
the State and to the defendant, and can only be decided
by a verdict. So I want you gentlemen to go back into
your jury-room, and if, after a conscientious considera-
tion of the arguments of your fellow jurors, you are still
convinced that your opinion is better founded in truth
than theirs, I do not ask you to give up that opinion.
But what I do ask is to go back and make a conscientious,
frank, open-minded effort to arrive at a verdict, and that
is my purpose in keeping you together, is to give you
plenty of time to do that and not for the purpose of pun-
ishing you and compelling you to arrive at a verdict. So
go back, gentlemen, into your jury-room and see if you
cannot arrive at a verdict.''

The jury had the case under consideration from the
24th of February until the 26th of February, 1927, before
returning the verdict. After deliberating some time on
the 24th of February they reported that they were
unable to agree, whereupon the court gave said caution-
ary instruction. After the noon hour on the 25th of
February the jury again reported that they were unable
to agree, and the court again gave them the cautionary
instruction. After supper on the same day the court
again gave them the cautionary instruction before they
retired to consider the case. Appellant objected to the
instruction each time it was given, and also objected to
it being given orally.

The constitutional inhibition against instructing
juries orally relates to declarations of law made by the
court applicable to the particular facts in a given case.
Instructions of that character should be reduced to writ-
ing by the court, when requested to do so. Section 23,
article 7, of the Constitution of 1874 of this State is as
follows:

"Judges shall not charge juries with regard to matters of fact, but shall declare the law, and in jury trials shall reduce their charges or instructions to writing, on request of either party."

Cautionary instructions are not supposed to contain declarations of law. They are simply warnings to the jury to lay aside all pride of opinion and consult with each other for the purpose of harmonizing their views, if possible, under the evidence; to apply the law as given by the court to the facts in the case and deal with each other in a spirit of candor in order to arrive at a verdict. In doing this the court may detail to the jury the ills attendant upon a disagreement, the expense, the length of time it has taken to try the case, the length of time the case has been pending, and that the case will have to be decided by some jury upon the pleadings and in all probability upon the same testimony. *Mallory* v. *State,* 141 Ark. 496, 217 S. W. 482; *Benson* v. *State,* 149 Ark. 633, 233 S. W. 758; *Evans* v. *State,* 165 Ark. 424, 264 S. W. 933; *Clarkson* v. *State,* 168 Ark. 1122, 273 S. W. 353; *Stepp* v. *State,* 170 Ark. 1061, 282 S. W. 684.

A short cautionary instruction embodying the matter detailed above would in no way deal with the law of the case applicable to the facts, and would not therefore be within the constitutional prohibition. The length of the cautionary instruction given by the court in the instant case would of itself necessitate that it be reduced to writing so as to prevent any possible dispute or misunderstanding as to its exact phraseology and contents.

The instruction, however, was not within the rule announced in the cases cited. It was not only long but involved and argumentative. It might well be characterized as a persuasive entreaty to the jury to change their minds and reach a verdict. The court called their attention to the fact that a change in mind did not indicate that one was a weakling. In emphasizing this point he took occasion to say that all the progress and all great inventions in the world were attributable to a reversal of men's ideas and opinions. This was a seductive appeal

to the progressive element of the jury to change their minds and return a verdict. The repetition of the instruction a second and a third time was calculated to cause the jurors to yield their honest convictions in order to prevent a mistrial. Although ills attendant upon a disagreement of a jury are great, yet they should not be entreated and overpersuaded to reach a verdict which is not the result of their free and voluntary opinion, as was done in this trial.

Another assignment of error is that the court refused to allow appellant to prove by J. K. Ford, whose name was alleged to have been forged by appellant to a note payable to the order of T. L. Dickerson in the sum of $1,500, that witness had a checking account in the People's Bank, and that his checks were honored by appellant, who was the cashier, when the witness was overdrawn, and that the witness authorized the appellant to sign his name to checks and notes in connection with the checking account of said witness at said bank. We think the court properly excluded this testimony, for the issue involved was whether appellant had obtained specific authority from J. K. Ford to sign his name to the $1,500 note. An admission of this testimony would have introduced collateral issues calculated to cloud the real issue in the case.

Another assignment of error was the refusal of the court to give appellant's requested instruction number 3, which is as follows: "If defendant signed the name of J. K. Ford to the note to Dickerson under the honest belief that he had the authority from Ford to do so, although the jury may now find that defendant did not in fact have such authority, the defendant is not guilty of forgery or of uttering a forged instrument."

The court instructed the jury on behalf of the State as follows: "If you find from the testimony, beyond a reasonable doubt, that the defendant, F. E. Stockton, signed the name of J. K. Ford to the note in question with the fraudulent intent to obtain the possession or to deprive another of any money or property, or cause him

to be injured in his estate or lawful right, without the knowledge or consent or authority of said J. K. Ford, you will find the defendant guilty of forgery.''

The last instruction presented the State's theory of the case, which was that appellant had signed the note in question with a fraudulent intent of depriving J. K. Ford of money or property without his knowledge, consent or authority, and that appellant was entitled to an instruction covering the converse of the State's theory. Requested instruction number 3 was intended to cover the converse theory, but is defective in failing to say that he would not be guilty of forgery if he signed the name of J. K. Ford to the note to Dickerson under the honest belief that he had authority from Ford to do so, if he acted without fault or carelessness. With this modification the instruction on retrial should be given as presenting appellant's theory of the case.

On account of the error in giving the cautionary instruction, which was inherently wrong and prejudicial, the judgment is reversed, and the cause is remanded for a new trial.