KENDRICK *v.* STATE.

POST *v.* STATE.

Opinion delivered February 17, 1930.

*G. C. Carter* and *Dave Partain,* for appellants.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant for appellee.

SMITH, J. Appellants were separately indicted, tried and convicted for selling intoxicating liquors, but the issues raised on their separate appeals are so nearly identical that a single opinion will suffice to dispose of both cases.

A motion was filed in each case for a change of venue, and the supporting affidavits appear to have been made by the same affiants in each case. There were sixteen of these affidavits, but only ten of the affiants were examined on the hearing of the petitions. These affiants gave testimony to the following effect. The death of the sheriff made a special election necessary to select his successor. Mack Ledgerwood, who was one of the candidates for the office, secured the nomination, and was elected, and it was currently stated during the campaign preceding the primary that if Ledgerwood were elected he would send

both defendants to the penitentiary. This statement was repeated all over the county, and with such frequency that it became one of the principal issues in the campaign.

Most of this testimony related to the state of the public mind in the townships of White Oak, Hogan and Alix, but it was shown that all the cities and towns of the Ozark District of the county (in which the venue was laid) were in these three townships, and that they were the most populous townships in the county, and contained about half the population of that district of the county. The testimony was not confined, however, to these three townships. One of the affiants lived in Watalula township; another in Middle township; another in Wallace; and still another in Mulberry township, and all these affiants testified that the talk was general all over the county that if Ledgerwood were elected sheriff he would send both defendants to the penitentiary, and for this reason they were of the opinion that defendants could not obtain a fair and impartial trial in that county.

In the recent case of *Mills* v. *State,* 168 Ark. 1009, 272 S. W. 671, it was said: "The rule by which the trial court should be governed in passing upon an application for a change of venue in a criminal case was restated by this court in the recent case of *Spurgeon* v. *State,* 160 Ark. 112, 254 S. W. 376, where we quoted from the case of *Whitehead* v. *State,* 121 Ark. 390, 181 S. W. 154, as follows: 'The trial court exercises a judicial discretion in passing upon the credibility of the affiants, but its discretion is limited to that question. When the petition for change of venue is properly made and supported, the court has no discretion about granting the prayer thereof, whatever the opinion of the court may be as to its truthfulness. The statute provides no method by which the court may determine the credibility of the affiants, but leaves the question to the court. A number of cases, however, have approved the practice of calling the affiants and examining them as to the source and extent of their information, for the purpose of ascertaining whether or

not they have sworn falsely or recklessly without sufficient information as to the state of mind of the inhabitants of the county as to the accused. But the cases also hold that the statute on this subject does not contemplate that the truth or falsity of the affidavits shall be inquired into, and that the only question for the determination of the court is whether or not the affiants are credible persons, and that all inquiry must be confined to that question.' ''

Applying this test to the testimony of the affiants, we think the court was not warranted in finding that they had sworn so recklessly, or had so little foundation upon which to base their opinion as not to be credible persons. If their opinions were correct, and they gave a plausible basis upon which they were founded, the public mind was so inflamed against the defendants, and this inflammation was so wide spread, that the affiants were not open to the charge of having sworn so recklessly as to be unworthy of belief.

It follows, therefore, that the venue should have been changed in each case. See, also, *Sisson* v. *State,* 168 Ark. 783, 272 S. W. 674.

In the case of appellant, Post, the facts were that the trial judge had directed the sheriff to deny bail, and when formal application for bail was made it was refused. In justification of this action the court held, that Post was in contempt of court, in that he had boasted to the sheriff, in a tone that could be heard by the court, that he could make bond up to fifty thousand dollars, and further that it was common talk around the court, and the court offices, that Post had stated that he would make bail, but would not be present when his case was called for trial.

It was not improper for the court to investigate the report that Post had stated that he would abscond and forfeit his bail, but the purpose of this inquiry should have been to ascertain what amount of bail should be required if the report was found to be true, and, if found to be true, the court might have fixed bail in a larger sum

than would have otherwise been required. But, even so, the offense charged was a felony, punishable only by imprisonment in the penitentiary, and the accused had the legal right to give bond for his appearance, and the denial of this right was not conducive to securing a fair trial.

After the jury in the Kendrick case had been considering of their verdict for some time, they returned into court and stated that the jury had stood six to six, but were then divided seven to five, and one of the jurors stated that "It don't look like we can ever agree." Thereupon, over the objection of defendant Kendrick, the court charged the jury as follows: "Gentlemen, I held one jury one time here six days, and they agreed. I have never started out with a jury that they didn't agree. I have discharged juries because I thought something was wrong. I discharged one awhile ago, because I thought there was something wrong, and I am going to have a hearing to see about it."

We have many times held that the trial court had the right to give cautionary instructions on the duty and necessity of juries agreeing upon verdicts, and have not reversed in such cases unless it appeared, that the instruction was coercive in its character. The instruction set out above appears to be of that character, for its purport was that no jury would be discharged until a verdict was returned, unless the court, "thought something was wrong." The jury was therefore confronted with the alternative of being kept together indefinitely or of being investigated if a verdict was not returned, and the instruction was therefore calculated to induce the jurors to make such concessions as were necessary to arrive at a verdict, and the instruction was therefore erroneous. *Stockton* v. *State,* 174 Ark. 472, 295 S. W. 397.

The jury in the Post case also disagreed, and the juries in both cases were brought into open court, whereupon the court charged the juries orally in the presence of each other over the objections of both defendants, as follows: "Gentlemen of the jury, these are two of the

most important cases that have been tried in this court; this is a crucial time; the law enforcement of Franklin County depends on the outcome of these two trials. You can go out and convict them or acquit them, whichever you see fit. I hope you can get a verdict.''

We think, under the circumstances, this instruction was erroneous, and prejudicial in both cases. There was no connection between these cases except that the offense charged in each indictment was the same. The jurors were no doubt familiar with the proceedings, which had previously occurred in the court, and the statement that ''the law enforcement of Franklin County depends on the outcome of these two trials'' appears to be not only a charge upon the facts, but also to carry an intimation that a verdict of guilty should be returned. The language quoted is followed by the statement that ''You can go out and convict them or acquit them, whichever you see fit,'' but that qualification must be construed in connection with the strong language which preceded it. The instruction recognized the power of the jury to acquit or convict, but it told the jury that the exercise of that power was crucial, in that upon the proper exercise of the power depended the enforcement of the law in that county. The import of the language appears to be too plain to be mistaken. The implication is that if the jurors were good citizens, and favored law enforcement, they would return a verdict of guilty. We are sure the learned trial judge was actuated by the laudable motive of attempting to enforce the law, but we think his zeal in this behalf led him to overstep the bounds. Trial judges are not permitted to express an opinion upon questions of fact, or to indicate to juries what in their opinion the verdict should be. However great the exasperation of the trial judge may be that juries do not return the verdict which the law and the testimony would seem to require, they must restrain themselves, and refrain from giving any instruction which contains a charge upon the weight of the testimony. Section 23, Article 7, Constitution.

The instruction which we have just criticized does not appear in the bill of exceptions approved by the court, but does appear in the bill of exceptions made by bystanders, and as there is no controverting affidavit it must be said, as was said of a similar record in the case of *Rebecca* v. *State,* 158 Ark. 265, 250 S. W. 513, that "we are therefore compelled, under the statute, to accept them as a correct statement of the language used by the court. *Wingfield* v. *State,* 95 Ark. 71, 128 S. W. 562." See also *Cox* v. *Cooley,* 88 Ark. 350, 114 S. W. 929; *Boone* v. *Holder,* 87 Ark. 461, 112 S. W. 1081, 15 Ann. Cas. 735.

In the Kendrick case it is insisted that the testimony is insufficient to support the verdict, in that it shows only what the testimony of the prosecuting witness was before the grand jury. We do not so understand the testimony. The witness was an unwilling one, and most of his examination related to his testimony before the grand jury, but we understand the purport of the testimony at the trial from which this appeal comes to be that the testimony which the witness had given before the grand jury, to the effect that he had bought liquor from appellant, was true. The truth of the testimony of this witness at the trial was, of course, a question for the jury.

Certain other errors are assigned and discussed, but as they relate to matters which are not likely to recur, we do not discuss them, but for the errors indicated the judgments must be reversed in both cases, and it is so ordered.

HART, C. J., concurs upon the ground, that the instructions were erroneous and prejudicial.

KIRBY, J., dissents.