HEARN *v.* STATE.

4439                                   200 S. W. 2d 513

Opinion delivered March 3, 1947.

234

*Boyd Tackett,* for appellant.

*Guy E. Williams,* Attorney General and *Arnold Adams,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, Chief Justice. Hearn has appealed from a judgment that he serve five years in prison. The verdict found the defendant guilty of voluntary manslaughter; but, following supplementary instructions given the second day after the jury's deliberations began, that body (as the law permits) did not designate the prison term. The Court supplied the deficiency.

Observing the jury's seeming difficulty in reaching its verdict, the Judge said:

"Gentlemen, it is dinner time! How do you stand?" Answer by a juror: "Ten and two". The Judge: "Ten for guilty of some degree of homicide and two for not guilty?" Answer by a juror: "Yes, Sir". The Judge: "The Court [thinks] you are making some progress, even though it is slow. We are not asking anybody to bring in a verdict, but I feel it is your duty. . . . If you don't decide this case it will have to be tried again, and that is expensive to the taxpayers of Pike County. It is a trying ordeal for the defendant and his family, and also a trying ordeal for the family of the deceased. If you can do so, I hope you will remember the testimony and reach a verdict".

It was held in *Murchison* v. *State,* 153 Ark. 300, 240 S. W. 402, that where the jury in a criminal case was recalled to the courtroom—and in response to the inquiry "how do you stand?" the reply was "eleven to one"—it was not error for the Judge to comment, "I see no reason why there should be no verdict in this case, one way or the other". But, said Chief Justice McCulloch, in such circumstances the language must be considered in connection with other remarks or instructions.

Judge McCulloch, who wrote the opinion in *Thomas* v. *State,* 107 Ark. 469, 155 S. W. 1165, emphasized the

constitutional provision that a trial court has no right, either directly or indirectly, to express to the jury an opinion respecting the weight of evidence. In that case the holding in *Sharp v. State,* 51 Ark. 147, 10 S. W. 228, was mentioned, including the quotation: " . . . it was natural for [the jurors] to seize upon and adopt any opinion which they understood the Judge to have expressed or intimated upon the questions they are required to decide".

By this it was not meant that when a Judge is apprehensive of mistrial because of natural misunderstandings, all discretion is denied in the matter of elucidation; the restriction is that what is said must not amount to comment on the weight of evidence. See *Phares v. State,* 158 Ark. 156, 249 S. W. 551. Nor is it error for the Court to ask jurors how they are divided as to numbers, "without indicating how they stand as to parties". *Eady v. State,* 168 Ark. 731, 271 S. W. 338. In *Evans v. State,* 165 Ark. 424, 264 S. W. 933, it was held that reversible error was not committed when the Court asked a question similar to that mentioned in the Eady case. The decision appears to have been predicated upon the proposition that there was nothing to indicate a desire by the Judge to know the nature of the jury's division; hence the answer was harmless error.

A different result attended our consideration of an instruction intended to be "cautionary". It was held to be "involved and argumentative, and an entreaty to [the jurors] to change their minds and reach a verdict". *Stockton v. State,* 174 Ark. 472, 295 S. W. 397.

In the case at bar the Judge (after having been told—in response to his own question whether ten were for conviction and two for acquittal) said:—"The Court thinks you are making some progress, even though it is slow".

It is not improbable that the two jurors who until then had been unyielding, concluded that the Judge believed evidence warranted conviction. This would amount to comment in the factual field reserved exclusively for

jurors in cases at law. For this reason the judgment must be reversed. Remanded for a new trial.