SEALE *v.* STATE

5157                                    400 S. W. 2d 269

Opinion delivered March 14, 1966

*Kirsch, Cathey & Brown,* for appellant.

*Bruce Bennett,* Attorney General, *Farrell Faubus,* Asst. Atty. General, for appellee.

JIM JOHNSON, Justice. This appeal is from a conviction for the felony of "overdrafting."

Appellant William J. Seale was charged by information on May 8, 1964, in the municipal court of Paragould with overdrafting. The information alleges that appellant on April 6, 1964, issued a check to Bise Auto Sales drawn on the Bank of Benton, Benton, Kentucky, for the sum of $1,250.00 and did not have sufficient sums in the bank to cover payment of the check upon presentment. Appellant was arraigned on December 11, 1964, and was bound over to Greene Circuit Court. At trial on May 18, 1965, the jury found appellant guilty, fixed his punishment at three years, "with the recommendation that the sentence be suspended providing the defendant pay in full the $1,250.00 to Lloyd Boyce [sic] without interest within two years from this date." The record contains a judgment filed May 28, 1965, which

contained a sentence of three years with two years suspended to make restitution. On June 16, 1965, a "correction judgment" was entered, "in correction of a clerical error" made in the earlier judgment, and sentenced appellant to three years in the penitentiary.

Appellant, ably represented by court-appointed counsel, has appealed to this court urging four points for reversal. Three of the points, *as presented here,* do not merit reversal; however, the decisive point urged by appellant is that the trial court erred in refusing to declare a mistrial when the trial judge inadvertently commented upon the testimony of appellant's wife.

Appellant's wife testified that her husband would buy wrecked cars, clean them up and repair them and resell them. She helped with his book work and with his cars when they needed cleaning up and vacuuming. She made some or most bank deposits. (She testified on direct examination that when appellant brought the car from Bise's Auto Sales, appellant spent four or five days fixing and cleaning it up. Then a Mr. Jeffries, whom appellant had seen working at Bise's, representing himself to be an agent of Bise's, got first the car title from appellant and a few days later the car itself, but did not give appellant the check on which this prosecution arose.) On cross-examination she again testified:

"A. What I did was actually help him clean the cars as they came in and work needed to be done on the cars that way, and I would go to the bank and deposit checks in the bank for him

Q. In other words, you kept up with the bank account then?

A. Partly, yes, sir."

Appellant's wife also testified that no one but her

husband wrote checks on the account. Further along she was asked if she knew anything about "three hot checks," which she denied. This ensued:

"Court: She testified she was in charge of the books. If not—

Mr. Cathey: Note my exceptions to the remarks of the court.

A. I didn't say I had charge of the books. I helped him with the books.

Court: The jury can tell what you testified to. They heard it. Don't be trying to contradict the court.

A. No, I am not.

Court: The record speaks for itself."

Appellant urges that any remarks by the trial judge in the jury's presence during a colloquy either with lawyers or witnesses are prejudicial when the judge's words relate, directly or indirectly, to the credibility of witnesses and the weight to be given their testimony. A quotation in *Fuller* v. *State*, 217 Ark. 679, 232 S. W. 2d 988, is directly in point:

" '... a judge presiding at a trial should manifest the most impartial fairness in the conduct of the case. Because of his great influence with the jury, he should refrain from impatient remarks or unnecessary comments which may tend to result prejudicially to a litigant or which might tend to influence the minds of the jury. By his words or conduct he may, on the one hand, support the character and weight of the testimony or he may destroy it in the estimation of the jury. Because of his personal and official influence, uncalled for or impatient remarks, although not so intended by him, may give one of the parties an unfair advantage over the

other.' *Western Coal & Mining Co.* v. *Krane,* 193 Ark. 426, 100 S. W. 2d 676. Also, see, *McAlister* v. *State,* 206 Ark. 998, 178 S. W. 2d 67.

"The requirement of Art. 7, § 23 of our Constitution, that 'judges shall not charge juries with regard to matters of fact,' applies as well to the credibility of witnesses and the weight to be given their testimony as to the outright truth or falsity of what they say. *St. L. S. W. Ry. Co.* v. *Britton,* 107 Ark. 158, 154 S. W. 215. *And it applies not only to what judges tell juries in the course of formal instruction but also to what they say in colloquys with lawyers in the jury's hearing.''* [Emphasis ours.]

See also *McMillan* v. *State,* 229 Ark. 249, 314 S. W. 2d 483; *Hearn* v. *State,* 211 Ark. 233, 200 S. W. 2d 513.

The case is reversed and the cause remanded for new trial.

HARRIS, C. J., dissents.

CARLETON HARRIS, Chief Justice, dissenting. Although agreeing with the majority that the trial court should not have made the remark upon which this reversal is based, I do not think that prejudicial error was committed.

This is not a case wherein the court, over and over, showed impatience, or clearly conveyed the impression that it did not consider particular evidence offered by the defendant as relevant or important. The majority cite three cases, *Fuller* v. *State,* 217 Ark. 679, 232 S. W. 2d 988, *McMillan* v. *State,* 229 Ark. 249, 314 S. W. 2d 483, and *Hearn* v. *State,* 211 Ark. 233, 200 S. W. 2d 513.

In *Fuller* the trial court was critical of evidence offered by the defense, and engaged in a colloquy with defense counsel. At three different times, the defendant

objected and excepted to the court's remarks, and finally the judge and counsel left the courtroom, and went to chambers. Upon returning (the opinion recites), there were further interruptions by the judge of the same tenor. This court, in a five to two decision, held that the Circuit Judge "went too far."

In *McMillan,* the court again demonstrated impatience, and three times made remarks to the effect that the court did not consider the evidence competent or relevant (though he permitted it to be given), remarking, "We are not trying a personal injury suit* * * You are going in too much detail." Objections and exceptions were overruled. Here again, there was a long discourse between the court and counsel in front of the jury.

· I do not consider *Hearn* v. *State* to apply to the case at bar, since it involved the remark of the trial judge upon being told that the jury stood "10 and 2."

In the case before us, it appears that the trial court was incorrect in stating that Mrs. Seale had testified that she was in charge of the books. The record reflects that she said that she helped her husband with his book work. When Mrs. Seale remonstrated that she had not said she was in charge of the books, the court made the remark which resulted in the reversal of this case. However, it will be noted that the court also said, ".The jury can tell what you testified to. * * * The record speaks for itself."

I have found that juries listen very attentively to the evidence, and I am confident that they knew that Mrs. Seale had *not* made the statement that she was in charge of the books, and it is actually my opinion that the court's remarks, "Don't be trying to contradict the court," if it had any effect at all, aroused the sympathy of the jury for the witness. It is natural for people to sympathize with an underdog, and I believe the jury recognized that Mrs. Seale, though correct in her state-

ment, was at a gross disadvantage in disputing the statement of the court.

I do not think appellant was prejudiced by the court's remark, and I therefore respectfully dissent.