RONNIE DALE WEST AND GARY LYNN WEST *v.*
STATE OF ARKANSAS

CR 73-118                    501 S.W. 2d 771

Opinion delivered December 10, 1973

*McArthur & Lofton,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Philip M. Wilson,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants Ronnie West and Gary West were convicted by a jury and sentenced to life imprisonment for the rape of a twenty-year-old woman. They raise the following points for reversal:

I. The trial court erred in refusing to allow appellants to pursue the source of the information gained by the Sheriff's Office leading them to suspect the appellants and in refusing to require the identity of the informant to be made known.

II. The trial court erred in ruling that the picture displays shown to the prosecuting witnesses were fair, and in ruling that there was probable cause for the arrest of appellants.

III. The trial court erred in refusing to allow a defense witness to testify as to the findings of his investigation concerning two persons in possession

of a truck identical to one described by the prosecuting witnesses and who had been suspects in this case.

IV. The trial court created prejudicial error by cross-examining a defense witness in a manner that impugned his credibility.

The prosecuting witness testified that on November 22, 1972, at approximately 11:00 p.m., while she and a male companion were in an automobile parked near a construction site, a pickup truck containing three men pulled in front of the vehicle she and her escort were occupying. She said two of the individuals, who she identified as appellants Ronnie and Gary West, got out of the truck and approached the car. She stated the two men said they were security guards for the construction company and ordered the victim and her companion to get out of their vehicle to be searched. She related that one of the men produced a knife, that her companion was knocked unconscious and that she was raped by both Gary and Ronnie West, aided by the third man.

Since we find reversible error on Point IV, we will treat it first. As their final witness at the trial, appellants called Officer Gary Stracener, Jacksonville Police Department, to testify concerning an investigation he had made to locate a pickup truck which matched the description given to sheriff's officers by the victim and her escort. On direct examination, Stracener said a pickup truck which fit this description, belonging to Kenneth Smith, had been reported by Smith as stolen on November 29, 1972. He testified the truck was later recovered in the possession of Raymond Raynard and Jerry Maxie, one of whom was related to Smith, and that charges against the two were dropped. The following colloquy then ensued:

Q All right. James, did you, did you look into James Raymond Raynard and the Maxie boy any further?

A Yes, I did.

Q What did your investigation reveal?

A I found that on June 18th, 1972, there was a warrant issued by—

THE COURT:

(Interposing) Just a minute. Does that have anything to do with this case?

MR. McARTHUR: [Defense Counsel]

It has something to do with the individuals that he's talking about, Your Honor. I think it is referable to this case.

MR. MAZZANTI [Deputy Prosecuting Attorney]

Your Honor, those individuals are not on trial here today.

MR. McARTHUR:

That's exactly my point.

THE COURT:

How many trucks like that are there in this county?

A I don't know offhand, Your Honor.

THE COURT:

How much were you paid to come up with this information?

MR. McARTHUR:

Your Honor, I object to this. I'll tell you, but I will object to it. I think the Court is interfering in the case at this point and I would ask for a mistrial.

THE COURT:

Denied.

MR. McARTHUR:

He's been paid nothing, if the Court wishes to know.

THE COURT:

Do you do this as a Jacksonville Police Officer?

A No, sir, I don't. I retired from investigating.

It is well established that the trial court may, in the interest of justice, direct questions to a witness calculated to elicit the truth concerning the subject matter being investigated, if they are carefully framed in a manner not indicative of any opinion on the merits of the controversy. *New* v. *State,* 99 Ark. 142, 137 S.W. 564. The trial court has some discretion in examining witnesses to clarify their testimony, and when no prejudice appears there is no abuse of that discretion. *Miller* v. *State,* 250 Ark. 199, 464 S.W. 2d 594; *Clubb* v. *State,* 230 Ark. 688, 326 S.W. 2d 816. However, appellants are correct in their contention that the questioning by the trial judge in this case reflected on the credibility of the witness and the weight to be given his testimony.

In a jury trial there is probably no factor that makes a more indelible impression on a juror than the attitudes, statements and opinions of the trial judge. To them, his word is the law. *McMillan* v. *State,* 229 Ark. 249, 314 S.W. 2d 483. The trial judge should always preside with impartiality and must be cautious and circumspect in his language for it is the jury that is the sole judge of the facts and the credibility of witnesses. *Fechheimer-Kiefer Co.* v. *Kempner,* 116 Ark. 482, 173 S.W. 179; *Sharp* v. *State,* 51 Ark. 147, 10 S.W. 228, 14 Am. St. Rep. 27. Because of his influence with the jury, remarks by the trial judge may tend to prejudice a litigant by destroying the weight and credibility of testimony in his behalf in the minds of the jury. Although the judge may not intend to give an undue advantage to one party, his influence may quite likely produce that result. *Fuller* v. *State,* 217 Ark. 679, 232 S.W. 2d 988; *Seale* v. *State,* 240 Ark. 466, 400 S.W. 2d 269; *McMillan* v. *State,* supra.

The prohibition in Art. 7, Sec. 23, of the Arkansas Constitution that "judges shall not charge juries with

regard to matters of fact" is as applicable to remarks going to the credibility of a witness and the weight to be given his testimony as it is to the truth or falsity of what the witness said. *St. Louis S. W. Ry. Co.* v. *Britton,* 107 Ark. 158, 154 S.W. 215; *Fuller* v. *State,* supra. Any expression of opinion by the trial judge as to the credibility of a witness would tend to deprive the parties of the full benefit of the judgment of the jury, unbiased by the opinion of judges. *Fechheimer-Kiefer Co.* v. *Kempner,* supra. We have said that a judge should not even intimate an opinion as to the credibility of a witness. *Sharp* v. *State,* supra. This stricture applies not only to what judges tell juries in formal instructions but also to what they say in colloquys in the jury's hearing. *Fuller* v. *State,* supra. Even though we are confident that the judge in this case had no intention of invading the province of the jury in its evaluation of Stracener's credibility and weighing his testimony, the question "How much were you paid to come up with this information?" could only have the effect of intimating that the trial judge believed the witness' testimony was of questionable value.

Appellant's counsel did not ask the court for an instruction admonishing the jury not to consider any remarks made by the trial judge as reflecting on whether a witness' testimony should be believed. The failure to request such an instruction is not significant in this case because such an instruction could not have cured the prejudice to appellants.

We have held that the trial judge has wide discretion in granting or denying a motion for a mistrial, and that we will not reverse a judgment because of his action on such a motion in the absence of an abuse of discretion or manifest prejudice to the complaining party. *Perez* v. *State,* 249 Ark. 1111, 463 S.W. 2d 394; *Shroeder* v. *Johnson,* 234 Ark. 443, 352 S.W. 2d 570. While we recognize that no prejudice was intended, the question could only be calculated to damage appellants' attempt to show that someone else might have committed the crime, therefore, the conviction must be reversed. The failure to grant appellants' motion for a mistrial in this case did result in manifest prejudice to appellants because of the influential position occupied by the trial judge, and the virtual

inevitability of the jury's according great weight to the strong intimation by the judge that the credibility of Stracener was questionable.

Since this case will be remanded for a new trial, we deal with appellants' other contentions, because they will probably again arise.

Appellants' Point I is without merit. The state's privilege to refuse to disclose the identity of informants, the so-called "informer's privilege," exists to further the public interest in effective law enforcement by preserving the anonymity of those citizens who provide law enforcement officials with information pertaining to criminal activity. *Roviaro v. United States,* 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957). The privilege is not an absolute one, but is rather qualified by the facts and circumstances of each particular case. *Davis v. Kirby, Judge,* 244 Ark. 142, 424 S.W. 2d 149. In a given situation there must be a balancing of the public interest in protecting sources of information against the individual's right to adequately prepare his defense. *Roviaro v. United States,* supra. Among the factors to be considered in determining whether nondisclosure was erroneous are: the crime with which the defendant is charged, possible defenses, the possible significance of the informer's testimony and other relevant factors. *Rugendorf v. United States,* 376 U.S. 528, 84 S. Ct. 825, 11 L. Ed. 2d 887 (1964); *Roviaro v. United States,* supra; *Davis v. Kirby, Judge,* supra.

Often, determination whether disclosure is required is ultimately made upon the basis of whether the informant was present or participated in the alleged illegal act with which the defendant is charged or whether the informer merely furnished information concerning criminal activity to law enforcement officers. *Roviaro v. United States,* supra. See *Bennett v. State,* 252 Ark. 128, 477 S.W. 2d 497. This distinction, which is not always conclusive, is important because the testimony of an informant who is also a witness may well be the sole means of amplification, modification or contradiction of the testimony of prosecution witnesses and is therefore essential to the preparation of an adequate defense. Officer Reeder of the Pulaski County Sheriff's Department testified the infor-

mant in this case was not a participant or an eyewitness to the crime with which appellants are charged. The informant's tip caused sheriff's officers to have the victim and her companion view two photographic showups from which they identified appellants. There is no evidence that the informant possessed any knowledge of the crime which was vital to the preparation of appellants' defense. Appellants' failure to show the existence of any facts or circumstances which would require the identity of the person who supplied sheriff's officers with the lead connecting appellants to this crime to be disclosed is fatal to their contention here. *Rugendorf* v. *United States,* supra; *Roviaro* v. *United States,* supra; *Davis* v. *Kirby, Judge,* supra.

We find no error in the trial court's ruling challenged in Point II. Appellants do not challenge the validity of the photographic showup from which appellant Ronnie West's picture was identified. Only the procedure used in showing the group of pictures containing Gary West's photograph to the victim and her escort is challenged. Officer Reeder testified he showed pictures of twelve men to the victim's male companion and later showed the same pictures to the victim and that both identified appellant Gary West. Reeder said two pictures of four individuals, including Gary West, appeared in the group. Appellant alleges the pictures of him were in sequence and contends the fact that his picture appeared twice made the showup patently unfair. We disagree. Neither the victim nor her companion was told that Gary West's picture appeared twice. Two pictures of three other individuals appeared in the group. Thus, the showup group contained pictures of twelve men, four of whom were pictured twice. The only evidence regarding the sequence of pictures was the testimony of Officer Reeder that the pictures were not arranged in any particular manner. Furthermore, both the victim and her escort later identified Gary West in a police lineup and at the trial. When a photographic identification is followed by an eyewitness identification at trial, the conviction will be set aside only if the photographic showup was so suggestive as to create a substantial possibility of irreparable misidentification. *King* v. *State,* 253 Ark. 614, 487 S.W. 2d 596; *Simmons* v. *United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968). We do not find the procedure here impermissibly suggestive.

Appellants also contend there was no probable cause for the arrest of appellant Ronnie West with a warrant and for the arrest of appellant Gary West without a warrant. They allege the only probable cause was supplied by the "tip" of an unknown informer who had never before provided the sheriff's office with any leads and that therefore there was not sufficient probable cause for the arrests. Appellant Gary West was already in custody on another charge at the time this charge was filed against him. He was not arrested without a warrant. Even if it may be conceded that the filing of charges against Gary West was tantamount to arrest, his contention is untenable.

Before charges were filed against Gary West there were four factors from which probable cause for charging him might be found, and there were three factors bearing upon probable cause for the issuance of a warrant for the arrest of Ronnie West. First, the victim and her escort had provided officers with a description of the two attackers which fit the Wests; second, the officers had received a tip that the Wests were connected with the crime; third, the victim and her companion identified both the Wests from photographic showups; and fourth, Gary West was identified in a lineup by the victim and her companion. Appellants' contention that a lead coming from an informer who had never before provided officers with a tip cannot supply probable cause is without merit. Simply because the informant's reliability could not be tested on the basis of his previous aid to officers, the sheriff's office was not required to ignore any information the informant provided. *Ford* v. *State*, 249 Ark. 695, 460 S.W. 2d 749. The informant's tip together with the description given to officers and the identification of both the Wests provided adequate probable cause for their arrest.

Even if appellants could establish that an illegal arrest had occurred, they stand to gain nothing. We have ruled that even if a person were arrested illegally, he is not entitled to release if he is guilty, and there is no assertion that any evidence obtained as a result of the illegal arrest was used against him. *Cassady* v. *State*, 249 Ark. 1040, 463 S.W. 2d 96; *Perkins* v. *City of Little Rock*, 232 Ark. 739, 339 S.W. 2d 859. Appellants here have been found guilty and have raised no contention that any evidence

used against them resulted from the alleged illegal arrest, unless it was the lineup identification of Gary West, but, as we have pointed out, he was already in custody.

Appellants' Point III contention is that the trial court erred in refusing to allow Officer Stracener to testify as to findings of his investigation concerning two other possible suspects. We find no error. Stracener testified without objection that a truck which matched the description given the sheriff's officers belonged to Kenneth Smith, a relative of one of the possible suspects, that Smith had reported the truck as stolen, that the truck was later recovered in the possession of Raymond Raynard and Jerry Maxie, alleged possible suspects, and that charges against these two were later dropped because Smith said they had permission to use the truck. Thus all the evidence relating to the pickup truck was admitted.

Objections were made and sustained to further testimony by Stracener in an attempt to show that warrants had at one time been issued for Raynard and Maxie in connection with this charge and that his investigation had revealed other information about these two men. The trial court was correct in ruling that testimony relating to the warrants was not admissible, since there was no evidence that Raynard and Maxie were guilty of this crime, but only that they had been charged. *Killiam* v. *State*, 184 Ark. 239, 42 S.W. 2d 12. As to any other matters that Stracener's investigation uncovered, there was no offer to show what his testimony would have been, and, consequently, we are unable to say that prejudicial error occurred. *Hawkins* v. *State*, 223 Ark. 519, 267 S.W. 2d 1; *Wooten* v. *State*, 220 Ark. 755, 249 S.W. 2d 968; *Baldwin* v. *State*, 119 Ark. 518, 178 S.W. 409.

The cause is reversed and remanded for a new trial.