## JACKSON v. STATE.

### Opinion delivered February 28, 1910.

1.  CONTINUANCES—DISCRETION OF COURT.—Motions for continuance are addressed to the sound discretion of the trial court, and the failure to grant a continuance will not be ground for reversal unless there has been a manifest abuse of discretion.  (Page 172.)

2.  SAME—BURDEN OF PROOF.—The burden is upon one who applies for a continuance for an absent witness to show that he used due diligence to procure such witness.  (Page 172.)

3.  INSTRUCTION—CREDIBILITY OF WITNESS.—An instruction in a felony case that the jury "cannot arbitrarily disregard the evidence of any witness, but if you believe that a witness has sworn falsely in this case, it is your duty to disregard the testimony of such witness, and if you believe that a witness has sworn falsely in part and truthfully in part in this case you should disregard the part which you believe to be false and accept that part which you believe to be true," is not objectionable as directing the jury to disregard the entire testimony of a witness who is found to have sworn falsely to any material fact. (Page 174.)

4.  SAME—SUFFICIENCY OF GENERAL OBJECTION.—A general objection to an instruction upon the credibility of witnesses is insufficient to call attention to the objection that it directs the jury to disregard the entire testimony of a witness who is found to have sworn falsely as to any material fact.   (Page 174.)

5.  SAME—PROVINCE OF JURY.—The court charged the jury in a felony case as follows: "This is an important case; * * * and if you can get together and render a verdict in this case, it is the desire of the court that you do so.  Gentlemen, you ought to be able to decide this case.  It is just like any other business proposition that you might be called upon as citizens to decide.  It sometimes happens that jurors who take opposite views become arbitrary and unreasonable, and fail to respect the opinion of the other members of the jury, but I hope this is not true of this jury, and I have no reason to believe that it is true.  So I want you to get together, if possible, and render a verdict in this case.  It will be a considerable amount of trouble and expense to have to try this case over again; a considerable amount of trouble and expense to this county and a considerable amount of trouble and

expense to this defendant, and I do hope you will get together and reach a verdict in this case. But what the court has said to you will not influence your verdict one way or the other." *Held,* not prejudicial error, in the absence of any specific objection to any part of the instruction. (Page 175.)

Appeal from Ouachita Circuit Court; *George W. Hays,* Judge; affirmed.

*H. S. Powell* and *Daniel Taylor,* for appellant.

1. Under the circumstances of this case there has been an abuse of that discretion vested in trial courts with reference to continuances. The testimony of the absent witness was material in the identification of the hog. A continuance had been granted to the State to procure the attendance of a witness to identify the animal, and, considering the age and ignorance of the defendant, and the distance he lived from the town where his counsel resided, due diligence is shown in the efforts put forth to procure the attendance of defendant's witness. 71 Ark. 180; 22 Ark. 164; 21 Ark. 460; 50 Ark. 161.

2. The verdict is contrary to the evidence. The burden is on the State, not only to overcome the presumption of innocence, but also to establish the defendant's guilt in each material element beyond a reasonable doubt. It is in proof that appellant owned "a big bunch" of hogs, some of which were of the same general description as those of McAnulty; therefore a motive for theft is not shown. Seth McAnulty says the hog he lost was a *deep red* sow, about eleven months old, which might have had a few black spots over her about the size of a dime, while J. W. McAnulty says it was a *blood red* sow, ten or eleven months old. The State's other witness, Lula Banks, says that the hog killed was "a sandy red hog, that had nearly as much white on it as red." She also states that he cut off the ears and burned the hair. Defendant states that the hog he killed was one of his own, that it was a "reddish hog with white spots over it; that he did not cut off the ears nor burn the hair, but on the contrary that he showed the hair to the officer who arrested him and to Mr. McAnulty, the owner of the missing animal, and this statement was not contradicted, although made in McAnulty's presence. 70 Ark. 386; 148 N. Y. 648; 34 Ark. 632; 13 Ark. 105; 67 Ark. 155; 67 Ark. 163; 70 Ark. 30; 41 N. E. 588; 74 Ark. 491; 153 N. Y. 10.

3. The instruction No. 3 is erroneous in not requiring the false testimony to be with reference to some material fact, before the jury would be authorized to disregard it, and in making it their positive duty to disregard it. 68 Ark. 336; 56 Ark. 244; 72 Ark. 436.

4. The court erred in his exhortation to the jury to agree upon a verdict, after they had twice reported that they were unable to agree, the same having the effect of coercing the jury into returning a verdict. 74 Ark. 431; 60 Ark. 45; 58 Ark. 277; 46 Mich. 623; 10 N. W. 44; 14 S. W. 538.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1. A defendant is not entitled to a continuance as a matter of right upon the filing of an application in proper form. Such an application is addressed to the sound discretion of the trial judge; and when he denies the motion, this court will not reverse his judgment unless there has been a manifest abuse of that discretion, amounting to a palpable denial of justice and an arbitrary and capricious exercise of power. 26 Ark. 323; 54 Ark. 243; 41 Ark. 153; 51 Ark. 167; 67 Ark. 543; 34 Ark. 26; 76 Ark. 290; 70 Ark. 521; 71 Ark. 62.

2. While it may be conceded that the State's testimony was not as strong, convincing and conclusive as it might have been, yet there is evidence to support the verdict, and this court will not reverse where there is any evidence to support the verdict. 13 Ark. 236; 17 Ark. 327; 19 Ark. 671; 24 Ark. 251; 23 Ark. 131; 33 Ark. 196; 46 Ark. 141.

3. There is no error in the third instruction. It does not come within the rule announced in the cases cited by appellant.

4. There is no error in the judge's admonitions to the jury with reference to trying to reach a verdict; no element of coercion. He made it plain to them that what he had said should not influence their verdict one way or another. 70 Wis. 448; Thompson on Charging Juries, § 58; 35 Mich. 56; 55 Ga. 53; 60 N. H. 472.

McCULLOCH, C. J. This is an appeal from a judgment of the circuit court of Ouachita County, convicting John Jackson of the crime of grand larceny, alleged to have been committed by stealing a hog, the property of one McAnulty. The first ground

for reversal urged is that the court erred in overruling defendant's motion for continuance. He moved the court to grant a continuance in order to procure the attendance of a Mrs. Massey, who would have testified, if present, that she knew the hog which was killed by defendant, and knew that it was defendant's hog, and that she purchased from him a part of the meat. Defendant was indicted and arrested during the spring term, 1909, of the court, and by agreement of the prosecuting attorney the case was continued until the fall term of the court. It came up for trial during the first week of the October term, and on motion of the prosecuting attorney it was postponed until the second week, and it was then that defendant presented his motion for continuance. He stated therein that he first caused to be issued a subpoena to the sheriff of Ouachita County, which was returned *non est*; that he then learned that the witness was in Saline County, and on October 29, 1909, sent a subpoena to Saline County, which was also returned *non est*; that he had since learned that she was in Jefferson County, to which county he had also sent a subpoena on October 29, which has not been returned. The subpoena to the sheriff of Ouachita County was issued on October 25, 1909.

In an unbroken line of cases it has been held by this court that motions for continuance in both civil and criminal cases are addressed to the sound discretion of trial courts, and that the court will not reverse a case on account of a failure to grant a continuance unless there has been a manifest abuse of discretion. The defendant was under indictment and arrest for six months before the trial, yet he showed no excuse for not ascertaining the whereabouts of the absent witness. No diligence at all is shown, and we can not say that the trial court abused its discretion. It does not appear why the subpoena was not issued for Mrs. Massey at an earlier date, nor what effort defendant had made during the time he was under indictment to ascertain the whereabouts of the witness and procure her attendance. The burden was on him to show those things, in order to obtain a postponement of the trial.

It is earnestly argued that the testimony is insufficient to sustain the verdict, in that the hog alleged to have been stolen is not fully identified as the hog which defendant killed. De-

fendant admits killing a hog at the time alleged, and selling a portion of the meat, and using the rest of it, but claims that it was his own hog. The question in dispute is whether or not the hog killed by defendant was the property of the prosecuting witness, McAnulty. McAnulty testified that he had two Jersey sows, one a large red, sandy colored sow, and the other a small red sow, that ranged around Benson's mill in Ouachita County, and that the smaller one failed to come up about the last of November and disappeared suddenly from the range at that time. He lived about one mile from Benson's mill, and defendant lived at or near the mill. McAnulty described the animal as being a red Jersey sow with black spots on her about the size of a dime, was about eleven months old and was pregnant, would weigh about 75 or 100 pounds when dressed, and was marked with a swallow fork in the right ear and split in the left ear.

Lula Banks, a young negro woman, who lived in the house with defendant at the time and cooked for him, testified that defendant killed a hog about that time which she described as "a kind o' reddish or sandy sow" with spots on it, and that she helped dress the hog, and saw that it was a pregnant sow. She testified that defendant tolled the sow into the yard, and then shot it, and, after dressing it, put the hair into a small tin bucket and took it to the fireplace and burned it, cut off the ears and had the head cooked first, sold a part of the meat to Mrs. Massey, and put the rest of it in a box under the table. She said also that the hog which defendant killed ranged around Benson's mill with a larger red one, and in another part of her testimony she said that another little red hog ranged there with them.

Now, the two witnesses, McAnulty and Lula Banks, give the same general description of the sow except that they differ to some extent as to the exact shade of red, and one says that the sow had a few black spots on her, and the other said that she had white spots on her. They both identify the hog as a small red, sandy sow, pregnant, and that she ranged around Benson's mill with another larger sow. McAnulty's sow disappeared from the range at the time defendant killed a sow of the same general description. The conduct of defendant, as related by the witness Lula Banks, shows that he was trying to destroy proof of identity of the sow and secrete the meat. He immediately burned the hair and cut off the ears before

he called the woman to assist in dressing the hog. She testifies that she never saw the ears. The jury were warranted in believing from the testimony that it was McAnulty's sow, but that one of the witnesses was mistaken as to the color of the spots on it. We think that this evidence was sufficient to identify the hog as the property of McAnulty, and to sustain a finding that the defendant killed it with intent to steal.

Defendant attempted to prove by his own testimony and that of another witness that the hog was his own property; but that question was fairly submitted to the jury, and, as the evidence is sufficient to sustain the verdict, it is not within our province to disturb it.

The court gave the following instruction over the general objection of defendant:

"3. You are the judges of the weight of the evidence and the credibility of the witnesses. You can not arbitrarily disregard the evidence of any witness; but if you believe that a witness has sworn falsely in this case, it is your duty to disregard the testimony of such witness; and if you believe that a witness has sworn falsely in part and truthfully in part in this case, you should disregard that part which you believe to be false and accept that part which you believe to be true."

Defendant insists that the instruction is open to the objection that it directs the jury to disregard the entire testimony of a witness who is found to have sworn falsely to any material fact. *Bloom* v. *State,* 68 Ark. 336; *Frazier* v. *State,* 56 Ark. 242; *Lee* v. *State,* 72 Ark. 436. We do not think the instruction, when read in its entirety, can be so construed, for in the latter part it says to the jury that "if you believe that a witness has sworn falsely in part and truthfully in part in tnis case, you should disregard that part which you believe to be false and accept that part which you believe to be true." If defendant feared that the first part of the instruction would be construed to authorize the rejection of the entire testimony of a witness, he should have called the attention of the court to it by specific objection. A general objection was not sufficient to call attention to the alleged defect.

After the jury had deliberated for a time and failed to agree, they returned into court, and the court delivered to them

the following charge or statement, which, it is argued by defendant's counsel, was in effect an improper exhortation to them to agree on a verdict, and really coerced them into rendering the verdict:

"Gentlemen of the jury, this is an important case. It is important to the people of this county, it is important to the people of the State of Arkansas, and it is important to this defendant; and if you can get together and render a verdict in this case, it is the desire of the court that you do so. Gentlemen, you ought to be able to decide this case. It is just like any other business proposition that you might be called upon as citizens to decide. It sometimes happens that jurors who take opposite views become arbitrary and unreasonable, and fail to respect the opinion of the other members of the jury, but I hope this is not true of this jury, and I have no reason to believe that it is true. So I want you to get together, if possible, and render a verdict in this case. It will be a considerable amount of trouble and expense to have to try this case over again; a considerable amount of trouble and expense to this county, and a considerable amount of trouble and expense to this defendant, and I do hope you will get together and reach a verdict in this case. But what the court has said to you will not influence your verdict one way or the other."

It will be observed that the court did not express any opinion as to the weight of the evidence, nor change in any manner the instructions already given; nor did the court urge the jurors to yield their individual convictions as to the result of the case. The statement amounted to no more than an admonition to the jury as to their duty to return a verdict, and this was guarded by the concluding remark that nothing that was said should influence the verdict. We find no prejudice in the remarks. *Johnson v. State,* 60 Ark. 45.

There is one expression in the statement, which had better have been omitted, for it might have been understood to mean that a preponderance of the testimony was sufficient to warrant a verdict. We refer to the remark that "it is just like any other business proposition that you might be called upon as citizens to decide." But, as the court had, in all of its instructions, told the jury that before they could convict they must believe be-

yond a reasonable doubt that defendant was guilty, we assume that there was no intention to give a contradictory instruction, and the attention of the court ought to have been called to this remark by a specific objection, otherwise it was waived.

We find no error in the record, and, while the evidence does not entirely satisfy us of defendant's guilt, there was sufficient to warrant the verdict, and we do not feel justified in disturbing it.

Affirmed.

WOOD and HART, JJ., dissent.