MURCHISON *v.* STATE.

Opinion delivered May 1, 1922.

1. JURY—COMPETENCY OF JURORS.—In a criminal case a juror was not incompetent who had, in a general way, an opinion as to defendant's guilt or innocence, but stated that he knew nothing of the facts of the case or of any other charge against defendant, and that he could try the case on the testimony adduced, disregarding his general opinion.

2. INTOXICATING LIQUORS—EVIDENCE OF SALE.—In a prosecution for sale of intoxicating liquors, where the evidence showed that defendant owned the house where sales were made and employed another to run a lunch stand in the building, evidence that such employee was engaged in selling such liquors was competent as tending to prove that defendant was interested therein.

8. CRIMINAL LAW—COURT'S STATEMENT AS EXPRESSION OF OPINION.—In a prosecution for the sale of intoxicating liquors, where, in

overruling objections to testimony of sales made in defendant's absence, the court stated that the testimony showed that defendant was operating and controlling the house, and upon objection to such remarks the court admonished the jury to pay no attention to such statement, it was not objectionable.

4. WITNESSES—CROSS-EXAMINATION.—In a prosecution for selling intoxicating liquor, refusal to permit defendant's counsel to ask a witness on cross-examination where he got "white mule whiskey" on another occasion was not error.

5. CRIMINAL LAW—INSTRUCTION—GENERAL OBJECTION.—An instruction that "if you find that any witness has wilfully sworn false as to any material fact in issue in the case then you may disregard, if you see fit, all the evidence of any such witness, or you may give regard to that portion of the evidence of such witness as you may believe to be true or disregard that portion which you believe to be false," while not literally correct, is not open to a general objection.

6. CRIMINAL LAW—INSTRUCTION ALREADY COVERED.—The refusal of a requested instruction is not error when the instruction is substantially covered by one given.

7. CRIMINAL LAW—COERCION OF JURY.—Where the jury in a criminal case were recalled to the court room, and the judge inquired how they stood, and was told, "Eleven to one," and the judge stated that he saw "no reason why there should be no verdict, in this case, one way or the other," such remark, when considered with the whole of the judge's remarks, did not amount to coercion or to an expression of opinion on the weight of the evidence.

Appeal from Mississipppi Circuit Court, Chickasawba District; *R. E. L. Johnson,* Judge; affirmed.

*Davis, Costen & Harrison,* for appellant.

*J. S. Utley,* Attorney General; *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

McCULLOCH, C. J. Appellant was convicted in the trial below under an indictment charging him with selling and being interested in the sale of intoxicating liquor.

In the trial of the case the State relied upon testimony tending to establish the sale of intoxicating liquor at appellant's place of business in the city of Blytheville, and there was evidence legally sufficient to warrant the jury in finding that whiskey was sold at that place, and that appellant had knowledge of the sale and was interested therein.

The first ground argued here for a reversal of the judgment is that the court erred in holding that one of the talesmen summoned by the sheriff was competent for service as a juror.    After the court ruled upon the competency of the juror, appellant exercised a peremptory challenge, and thereafter exhausted his statutory number of peremptory challenges in making up the jury.

The talesman in question, Mr. Oberste, stated that in a general way he had an opinion concerning the guilt or innocence of the accused of the defense embraced in the indictment.    On further examination by the court, he stated, however, that he knew nothing of the facts of this case or of any other particular charge of liquor-selling against appellant, and that he could try the case upon the testimony adduced, disregarding entirely his general opinion concerning the guilt or innocence of appellant.

The state of mind of Mr. Oberste, as established in substance by his statement made to the court, was that he had an opinion on his mind that appellant had been guilty of violating the laws against the sale of intoxicants, and that he would go into the jury box with that impression on his mind, but that he was not informed as to any facts upon which a charge of this kind against appellant was or could be predicated, and that he could try this case upon the testimony adduced.    He was not asked to state, and did not state, the source of his information upon which his opinion was based.    The juror was therefore not disqualified.

In the first place, it is not shown that the opinion of the juror was not based on mere rumor, and his statements of his mental attitude with respect to the matter showed that his opinion was necessarily based upon rumor, and not upon a statement of facts concerning appellant's guilt or innocence.    There was no error of the court therefore in its ruling in this regard.

It is next insisted that the court erred in admitting certain testimony.

Appellant was the owner and occupant of a business house in the city of Blytheville, where he operated

a cold-drink stand. The ground floor consisted of a room about twenty-one feet in width and seventy-odd feet in length, with a small room cut off in the back end. There were rooms above, which appellant rented out to roomers. There was a man named Manning employed by appellant to run a hamburger stand in the main room of the store, and the State was permitted to prove that Manning sold whiskey at that place, and that he usually went back to the small room in the rear and brought out the bottles and delivered them to customers and collected the price.

One witness, Durham by name, testified that he bought whiskey from Manning at that place. Another witness, a carpenter who was working at the place, testified that he saw Manning make sales of whiskey, and that appellant was passing in and out of the room from time to time.

The sheriff of the county, Mr. Blackwood, testified that he raided the place several times and found fruit jars in the little room in the rear which smelled of whiskey, and that he found a funnel there which had the whiskey odor in it. Blackwood also testified that he lay in wait in the rear of the store one night and detected a person coming out of the back door with a bottle of liquor.

It is insisted that the court erred in admitting this testimony as to sales without showing that appellant was present at the time the sales were made, but we are of the opinion that the testimony was competent under the circumstances proved in the case, as the jury were warranted in drawing the inference from the facts proved that appellant was interested in the sale and had knowledge of the fact that Manning was selling whiskey. The place of business was owned and operated by appellant, and Manning was his employee. Appellant gave his personal attention to the operation of the business there, and, even though he was not present when Manning made the sales, if he was interested and knew that the sales

were being made by Manning, he was guilty under the statute. *Robinson* v. *State,* 38 Ark. 641.

Of course, the fact alone that Manning was the employee of appellant and sold intoxicants without appellant's knowledge or consent would not render appellant guilty of unlawful participation or interest in the sales (*Partridge* v. *State,* 88 Ark. 267); but, as before stated, if appellant was in fact interested in the sale and was aware of the fact that Manning was making the sales, he was equally guilty with Manning.

The court was therefore correct in permitting proof of sales made by Manning under the circumstances shown in the evidence.

Objections were made to remarks made by the court in overruling appellant's objections to this testimony, wherein the court stated, in substance, that the grounds for overruling the objections were that the testimony of the witnesses showed that the whiskey came out of appellant's house and tended to show that appellant was operating and controlling the house. The basis of the objection to this statement of the court is that it amounted to an expression of the opinion of the court on the weight of the evidence. When the objection to the remark was made, the court turned to the jury and gave the following admonition:

"You need not pay any attention to what the court said. I am simply making a ruling, and anything the court said you will pay no attention to, for the facts are for you to determine. And the court further states to you, with reference to the parties coming out of the back door of this place, as to what force and effect it has and the weight to attach to it, under the evidence, it is solely in your province to determine."

We do not think that the court's statement, when considered in connection with the admonition given to the jury, could be treated as an expression of the opinion of the court upon the weight of the evidence.

Again, it is insisted that the court erred in refusing to permit appellant's counsel to ask a witness on cross-

examination, where he got "white mule whiskey" on another occasion. The court held that it was unimportant where or from whom the witness had gotten liquor on other occasions, and appellant saved his exceptions to this ruling.

The court was undoubtedly right, for it is unimportant to inquire of the witness concerning the purchase of liquor from other persons at other times and places.

Appellant made a general objection to the following instruction given by the court:

"If you find that any witness has wilfully sworn false as to any material fact in issue in this case, then you may disregard, if you so see fit, all of the evidence of any such witness, or you may give regard to that portion of the evidence of such witness which you may believe to be true or disregard that portion which you believe to be false."

This instruction, when interpreted literally, was not a correct statement of the law on the subject, but, in the absence of a specific objection to it, appellant is not in an attitude to complain. *Bruder* v. *State,* 110 Ark. 402; *Johnson* v. *State,* 120 Ark. 193; *Griffin* v. *State,* 141 Ark. 43.

Error of the court is assigned in modifying the following instruction requested by appellant:

"The bare presence of the defendant at the time of the commission of the crime in question, if he were present, would not justify his conviction unless the evidence shows that he was by some act aiding, abetting, assisting or encouraging the person who actually committed the crime."

The change in the instruction was slight and merely changed the verbiage, which did not in anywise change the meaning of the instruction, and there was no error committed in this respect.

Finally, it is contended that the court committed error which was prejudicial to the rights of appellant in remarks made to the jury, after long deliberation over the case, which tended to coerce the jury into rendering a verdict.

It appears from the recitals of the bill of exceptions that, after the jury had been deliberating for a time, the court called the jury in and made inquiry of the foreman in the presence of the other jurors as to how the jury stood, and the foreman replied, "eleven to one." The court then stated that the jury would not be discharged, but would be required to deliberate further, and the court then gave further instructions concerning the form of the verdict and handed the jury forms for a verdict either for an acquittal or conviction. The jury came in again just before the noon recess, and, after announcing that a verdict had not been agreed upon, the court discharged them until the reconvening of the court, with the customary admonition not to discuss the case among themselves or permit any one else to speak with them concerning the case until they reconvened after the noon recess for further deliberation. After the recess, when the jury had assembled in the court room, the court made the following statement to the jury:

"Gentlemen of the jury, I just want to say that hung juries don't get the courts anywhere. It just means additional time taken up by the court and additional burden of expense on the public, and the court sees no reason why there should be no verdict reached in this case, one way or the other. As to how it goes, is a matter for you to determine, and I want you to take these forms of verdict and retire to the jury room and further consider this case."

It is insisted that this language of the court was calculated to operate as compulsion on the single juror who was holding out for acquittal to go over to the majority and join in a verdict of conviction. It will be observed, however, that the court in its statement admonished the jury that it was their duty to reach a verdict "one way or the other," and did not direct the attention of the jury to the particular verdict which should be rendered. It has been held in some of our decisions that a similar admonition given by the trial court to a jury does not constitute compulsion and is not reversible error.

*Johnson* v. *State,* 60 Ark. 45; *Jackson* v. *State,* 94 Ark. 169; *St. L. I. M. & S. Ry. Co.* v. *Carter,* 111 Ark. 272.

In *Johnson* v. *State, supra,* Judge BATTLE, speaking for the court, said:

"In the language objected to, no opinion as to the facts in the case is indicated, nor was the jury advised to yield their honest convictions for the purpose of arriving at a verdict. The court sought to impress them with the importance of a decision, and, while it did not ask them 'to yield up any question of conscience,' advised them to not be obstinate or too tenacious of their opinions. What, from this, were they reasonably to understand? Manifestly, that they should not be stubborn or unreasonable in adherence to their opinions. And this is the duty of jurors."

In the instance now before us for review, the court, by inquiry, elicited a statement from the foreman as to how the jury stood numerically, and it appeared from the statement that the jury stood eleven to one. It is generally a question of discretion with the court to determine how long a jury should be held together in an effort to agree upon a verdict, and there is no impropriety in the trial judge making inquiry as to the probability of the jury being able to arrive at a verdict if kept together for further deliberation. It is the opinion of the majority of this court that it is not improper for the trial court to inquire how the jury stands numerically, but the writer and Mr. Justice WOOD think that the practice is not one to be commended, for it is calculated to single out a juror or a small minority of the jurors as being especially in the mind of the court in any admonition that is given. In other words, the remarks of the court are rendered personal to some extent when the fact is openly brought to the attention of the court in the presence of the jury that a small minority is holding out against the majority. It is far better that whatever the court has to say to the jury in an admonition concerning the duty to arrive at a verdict should be entirely impersonal, and a single juror should not be made to feel that he is the sole object

of the court's remarks. However, we do not say that under all circumstances it constitutes reversible error for the court to thus elicit information concerning the standing of the jury and then to further give proper admonition as to the duty of the jurors in an effort to arrive at a verdict. The inquiry should, we think, be considered in determining the probable effect of the court's remarks and it might not, under some circumstances, be without controlling force.

In the present instance, when the whole of the court's remarks are considered together, we do not think that they amount to coercion or to an expression of opinion on the weight of the evidence and that they do not call for a reversal of the judgment.

We find, after careful consideration of the record, that there was no error committed by the court, and the judgment is therefore affirmed.