HARRISON v. STATE.

4158                                       138 S. W. 2d 785

Opinion delivered April 1, 1940.

*J. M. Jackson* and *H. E. Humphreys,* for appellant.

*Jack Holt,* Attorney General and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

HOLT, J. Appellant was tried in the Phillips circuit court on an information charging murder in the first degree. He was convicted of manslaughter and his punishment fixed by the jury at four years in the penitentiary. The jury's verdict is as follows: "We, the jury, find the defendant guilty of manslaughter and fix his punishment at four years in the penitentiary. J. W. Richardson, Foreman."

Appellant assigns errors which we proceed to review.

First he contends that the evidence is not sufficient to support the jury's verdict. On this question we must view the evidence in its most favorable light to the state and when we do this, we think it amply sufficient to warrant the conviction and the punishment assessed.

The evidence is to the following effect:

Melvin Payne, an inspector for the state revenue department, in the early morning of August 31, 1939, in company with Herman Carvill, Albert Slaughter, W. B. McCreight, and Mr. Ellis, the night marshal of West Helena, Arkansas, while riding in an automobile in West Helena, observed appellant, Eugene Harrison, driving a large truck along the street in a southerly direction. The truck carried a Mississippi state license. It is inspector Payne's duty to check foreign trucks to see if they carry an Arkansas permit. When a truck has a permit, a black sticker is displayed on the windshield.

Appellant's truck did not carry this sticker. He stopped appellant's truck after pursuing it for some distance. Mr. Slaughter, now deceased, one of the occupants of Payne's car, was the game warden of Phillips county. McCreight is sales auditor for the revenue department and works out of Little Rock.

Payne got out of his car and Mr. Carvill followed him. Payne asked the truck driver if he were drunk. He had gotten out of the cab of his truck and walked about half way up the side of the truck on the pavement. It was under a street light and it was light there. When he asked appellant if he were drunk, he said, "I am not." Payne walked up within a foot and a half of appellant and told him he was with the state revenue department and would like to check up on what he had. Appellant then said, "You had better get back, I am going to kill somebody." Appellant had his right hand hanging behind him. Payne couldn't see the pistol at that time. Appellant fired at the same instant he made that statement. Herman Carvill was standing still at the back end of Payne's car. Payne was off at the side and grabbed appellant's wrist with his left hand. Mr. Slaughter and Mr. McCreight helped him. About that time Mr. Ellis, the night marshal, came up and hit appellant across the head two or three times before he turned loose the pistol. The pistol dropped to the ground, Mr. Ellis picked it up and handed it to Mr. Slaughter. Payne then heard Mr. Carvill say that he was shot, and ran to him. None of the occupants of Payne's car was armed that night. Payne went back and looked in the truck. It had whiskey in it. By that time the ambulance came up and then appellant was lying on the pavement. Mr. Carvill lived about five or six minutes after he was shot. This testimony is fully corroborated by Mr. McCreight and the night marshal, Ellis.

Gene Hilliard, on behalf of the state, testified that he talked to appellant in an eating place near Forrest City just a short time before the killing and appellant asked him if he ever hauled any whiskey, and that he told him he did. Whereupon appellant asked if he carried any protection. Hilliard told him he did not. Appellant

then said, "Well, I carry mine and if they stop me and try to take mine I will use it." Hilliard did not see appellant with the pistol, but saw the proprietor of the eating place with it.

Appellant testified that he thought that Payne and the officers who stopped and arrested him were hijackers and bent on taking his load of liquor and beating him up, that he had no intention of killing Carvill and acted in his own necessary self-defense. Unfortunately for appellant, the jury thought otherwise.

As to the sufficiency of the evidence, in the recent case of *Clements* v. *State,* 199 Ark. 69, 133 S. W. 2d 844, this court said: "In *West* v. *State,* 196 Ark. 763, 120 S. W. 2d 26, this court said: '. . . it is also a well-settled rule that the evidence at the trial will, on appeal, be viewed in the light most favorable to the appellee, and if there is any substantial evidence to support the verdict of the jury, it will be sustained. *Daniels* v. *State,* 182 Ark. 564, 32 S. W. 2d 169; *Walls & Mitchell* v. *State,* 194 Ark. 578, 109 S. W. 2d 143; *Humphries* v. *Kendall,* 195 Ark. 45, 111 S. W. 2d 492'."

After the jury, in the instant case, had been out for some time considering its verdict, it returned and asked the court to instruct it again on manslaughter. Whereupon the court read to it the instruction previously given as follows: "Manslaughter is the unlawful killing of a human being, without malice, express or implied, and without deliberation. It must be voluntary, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible."

Appellant objected in the following language: "The defendant excepts to the court giving the instruction, at this time, to the jury on the question of manslaughter, which instruction was given in the language of the statute defining manslaughter, for the reason that all of the instructions, both for the state and the defendant, should have been read to the jury at this time."

No error was committed here.

This court, in *Pless* v. *State,* 102 Ark. 506, 145 S. W. 221, said: "It was within the province of the pre-

siding judge to recall the jury and give them further instructions when, in the exercise of a proper discretion, he regarded it necessary to do so in the furtherance of justice, and it is not always necessary in such cases that he should repeat the whole charge . . ."

It is next contended that appellant was either guilty of murder in the first degree or nothing, and that he could not be guilty of voluntary manslaughter on the evidence as presented in this record.

In *Bennett* v. *State*, 95 Ark. 100, 128 S. W. 851, a man was charged with first degree murder. The jury found him guilty of voluntary manslaughter and his contention was that there was no evidence to support such a verdict. This court, in affirming the verdict, said:.

"We would not have disturbed a verdict, under the evidence, for murder in the first degree. There is evidence tending to show that appellant was guilty of murder in the first degree. There is no evidence tending to prove that appellant was guilty of voluntary manslaughter. His crime was murder in the first degree, if anything. By finding the appellant guilty, the jury accepted the testimony tending to prove guilt, and rejected the testimony of appellant tending to prove his innocence. Since there was testimony tending to show that appellant was guilty of murder in the first degree, he cannot complain because the jury, believing him guilty of some offense, found for a lower degree than that of which he was guilty, if guilty at all. Appellant was not prejudiced by the verdict as to the degree of homicide of which the jury found him guilty, since they might have found him guilty under the evidence of the highest crime charged in the indictment."

There is no merit, therefore, in this contention of appellant.

Appellant next contends that manslaughter consisting of the degrees, involuntary and voluntary, should have been so defined to the jury. This very question was determined adversely to appellant in the recent case of *Link* v. *State*, 191 Ark. 304, 86 S. W. 2d 15. In that case the record revealed that the jury was instruct-

ed as to voluntary manslaughter only, and there this court said:

"Appellant next urges that the jury's verdict, to-wit: 'We, the jury, find the defendant guilty of man-slaughter, the penalty to be fixed by the court. (Signed) G. H. Vineyard, Foreman,' is insufficient in law to support the consequent judgment entered thereon for voluntary manslaughter.

"This exact contention was urged before this court in *Fagg* v. *State*, 50 Ark. 506, 8 S. W. 829, and we there disposed of the contention by saying: 'The verdict did not designate the degree of manslaughter, or assess the punishment. The duty of fixing the penalty devolved therefore upon the court. Mansf. Dig., § 2308. On conviction of murder the statute requires the degree of the offense to be found by the jury. Mansf. Dig., § 2284; *Thompson* v. *State*, 26 Ark. 323; *Ford* v. *State*, 34 *Id.* 649. It is not so as to manslaughter. . . .

"'Viewing the verdict in the case in the light of the evidence and court's charge, the conclusion is reasonable, if not irresistible, that the jury intended a conviction of voluntary manslaughter. The court had charged them specifically upon that offense, and had made no mention of involuntary manslaughter. If they knew there was such a grade of homicide, it is not probable that they understood that the defendant could be convicted of it in this prosecution. A verdict of involuntary manslaughter would have been inappropriate to the evidence, and the jury would have been unmindful of their duty to have returned such a verdict.' "

Appellant next complains because the court permitted the state to excuse juror Brush, he being the tenth juror accepted by the state and the defendant. The record does not show that appellant had exhausted all of his challenges at the time this juror was excused. It does show that the jury had not been accepted by appellant when this juror was excused by the state. We think, therefore, no error was committed.

In *Holt* v. *State*, 91 Ark. 576, 121 S. W. 1072, this court said: "It does not appear, therefore, that ap-

pellant was prejudiced by the ruling of the court. It does not appear that by the ruling of the court appellant was compelled to accept some juror that was unsatisfactory to him. The appellant, not having exhausted his peremptory challenges, waived any error the court may have committed in not excusing the juror for cause. *York* v. *State,* 91 Ark. 582, 121 S. W. 1070, 18 Ann. Cas. 344; *Glenn* v. *State,* 71 Ark. 86, 71 S. W. 254; *Caldwell* v. *State,* 69 Ark. 322, 63 S. W. 59.''

And in *Burnett* v. *State,* 197 Ark. 1024, 126 S. W. 2d 277, this court said: ''. . . In *Sullivan* v. *State,* 163 Ark. 11, 258 S. W. 643, with reference to the selection of trial jurors from the regular panel, this court said: 'These were matters over which the circuit judge must necessarily have a wide discretion. It is thoroughly settled that a defendant has no right to the services of any particular juror. He may only demand that he be tried before a fair and impartial jury, and it is difficult to imagine a case where the judge had excused a juror from further service on the regular panel which would afford any defendant just cause of complaint.' ''

Finally, appellant earnestly urges that the record in this case fails to show affirmatively that the jury trying appellant had been sworn as required by § 4006 of Pope's Digest. We cannot agree to this contention.

The record reflects that after the transcript was filed in this court on January 8, 1940, a petition was filed in the Phillips circuit court to correct the judgment and record to show that the jury that tried appellant had in fact been sworn as required by law. After a response had been filed to the state's petition, a hearing was had before the court at which the testimony of A. M. Coates, special attorney for the state, the clerk of the court, and six members of the jury trying the case, was taken. At least three of these witnesses testified positively that the jury was sworn in accordance with the provisions of the statute, *supra,* and the others testified that according to their best recollection the jury was properly sworn. Thereupon the trial court on February 24, 1940, entered a *nunc pro tunc*

order showing the fact in the judgment that the jury, which tried appellant, was sworn as provided by law.

The record, as corrected by this *nunc pro tunc* order, has been certified to this court by the clerk of the Phillips circuit court in response to a writ of certiorari directed to him to certify to the supreme court a transcript of the completed record in said circuit court.

The purpose of a *nunc pro tunc* order is clearly stated in *Dickey* v. *Clark,* 192 Ark. 67, 90 S. W. 2d 236, in the following language:

"The purpose of a *nunc pro tunc* order is to make the record reflect the transaction which actually occurred, and which is not reflected by the record because of inadvertence or mistake. Its province cannot be extended to make the record show what ought to have been done. In *nunc pro tunc* proceedings the record may be corrected or made to speak the truth upon the parol testimony alone, but the evidence thus established should be decisive and unequivocal. *Midyett* v. *Kerby,* 129 Ark. 301, 195 S. W. 674; *Tipton* v. *Phillips,* 176 Ark. 308, 4 S. W. 2d 507; *Tracy* v. *Tracy,* 184 Ark. 832, 43 S. W. 2d 539."

It is our view that it can make no difference whether the *nunc pro tunc* order in question was procured at the instance of the attorney general of the state or the prosecuting attorney of the district wherein the crime was committed. Its purpose was to correct the judgment to make the record speak the truth and show, not what ought to have been done, but what in truth, and in fact, was done, and in the instant case, that the jury that tried the case was properly sworn. This could be shown by oral testimony.

It is also our view that the trial court, on its own motion, could have proceeded to hear oral testimony to correct the record to make it speak the truth.

We think the testimony sufficient to support the *nunc pro tunc* order.

In *Freeman* v. *State,* 158 Ark. 262, 249 S. W. 582, 250 S. W. 522, this court said: "After the appeal was taken and the transcript lodged in this court, the only jurisdic-

tion remaining in the circuit court was to correct the judgment by *nunc pro tunc* order to make it speak the truth.''

In *Fletcher* v. *State*, 198 Ark. 376, 128 S. W. 2d 997, this court said: ''In *Robinson* v. *Arkansas Loan & Trust Co.*, 72 Ark. 475, 81 S. W. 609, it was held that, when an appeal is granted and an authenticated copy of the record is filed in this court, the suit is thereby removed to the supreme court. When transcript is filed, the jurisdiction of the supreme court is complete, and the lower court loses jurisdiction, except to correct its judgment to make it speak the truth, in aid of the jurisdiction of the appellate court. The same rule has been held applicable to criminal cases. *Freeman* v. *State*, 158 Ark. 262, 249 S. W. 582, 250 S. W. 522.''

In *Tong* v. *State*, 169 Ark. 708, 276 S. W. 1004, where the identical question presented here was before this court, in sustaining the ruling of the trial court in making a *nunc pro tunc* order under similar circumstances, this court said:

''In the original transcript of the record there was no showing that the jury was sworn except by the bill of exceptions; but on application of the state the cause was continued to give the state an opportunity to correct the record, and on application to the trial court the record was corrected by *nunc pro tunc* entry thereon to show that the jury trying the cause was duly sworn. The record thus corrected by the trial court has been brought into the transcript of the record here by certiorari. The appellant contends that the court erred in making this *nunc pro tunc* entry, but we are convinced, upon an examination of the testimony taken before the trial court on that issue, that the judgment of the court was correct. The evidence was sufficient to sustain the finding of the court that the jury was duly sworn.''

We find no error in this record. The judgment is accordingly affirmed.