McGaha v. State.

4580                                      224 S. W. 2d 534

Opinion delivered November 28, 1949.

*Claude F. Cooper,* for appellant.

*Ike Murry,* Attorney General, and *Jeff Duty,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. Appellant was charged with murder in the first degree in the killing of H. G. Blanchard. The jury found him guilty of murder in the second degree and fixed his punishment at eight years in the penitentiary. This appeal is from the judgment rendered on the jury's verdict.

There is little dispute in the evidence. Appellant and deceased were carpenters who worked out of the E. C. Robinson Lumber Co. at Blytheville, Arkansas. Appellant came to the company's place of business in the afternoon of June 19, 1948, where he engaged in a quarrel with deceased. Appellant accused deceased of "double-crossing" him by employing another man to help deceased on a $60 construction job, when he had promised to give the job to appellant. After saying, "I ought to slap your damned head off—I believe I'll do it," appellant slapped at deceased and missed him. He then slapped deceased in the face knocking him backward eight or ten feet. Deceased called to Boyne Haywood, an employee of the lumber company, who was standing nearby and said, "Haywood—don't let him hit me." Haywood intervened and said to appellant, "Don't hit a man 30 years older than you are," and walked back to the carpenters' shop with appellant.

Deceased's nose was bleeding as he left and went to the city hall where he made complaint to the police and a warrant was issued for appellant's arrest. The Chief of Police telephoned the lumber company and appellant was told to report to the city hall. After deceased had been gone about an hour, he returned to the lumber company where appellant had remained.

Deceased stood in a driveway between two buildings of the company talking to a painter and another carpenter. When appellant saw deceased, he threw off his hat, ran and lunged at him and threw or knocked deceased down on some platform scales as he started into the company office in an attempt to avert the attack. Bystanders pulled appellant off deceased and escorted him into the office. Appellant then remarked, ''By God, I think I'll go back and finish him up,'' and rushed back through the office door and struck deceased in the mouth with his fist knocking him down on the concrete floor of the driveway where he lay unconscious and motionless. Appellant then said, ''Now, I guess that's the end of it,'' and walked into the office and said: ''There he is, Haywood.'' Appellant was arrested at his home about an hour later.

Deceased was taken to a hospital where he died the following morning. The doctor attributed death to a cranial cerebral hemorrhage resulting from a fracture at the base of the skull. There was a laceration at the back of the head and blood from the nose was diluted with spinal fluid indicating the skull fracture. There was also evidence that the left side of deceased's face was bruised and swollen; that his lips and mouth were black and swollen and his nose was mashed flat. Deceased was 69 years of age and in good health prior to the killing. He made no hostile demonstration toward appellant and sought to avoid any difficulty with him at the time of each of the three assaults. Appellant was drinking, but was not visibly intoxicated.

The first three assignments of error in the motion for new trial challenge the sufficiency of the evidence to support the verdict. We think it proper to consider

these assignments in connection with assignments 11, 12 and 14 which allege error in the court's refusal to give appellant's Requested Instructions Nos. 2, 3, and 5. The requested instructions would have in effect told the jury that appellant, under the evidence adduced, would be guilty of no greater offense than manslaughter.

It is argued that, since no weapon was used and the parties had previously been on good terms, there is insufficient evidence to sustain a conviction for any offense greater than involuntary manslaughter. Appellant relies on the cases of *McClendon* v. *State,* 197 Ark. 1135, 126 S. W. 2d. 928, and *Bone* v. *State,* 200 Ark. 592, 140 S. W. 2d 140, where convictions for the crime of murder were reduced to seven years imprisonment for voluntary manslaughter. It is true that the defendant in each of the cases cited used a weapon, but the evidence further disclosed that the killing resulted from a sudden fight provoked by the deceased who was the aggressor and was armed with a pistol.

Since death is not the natural or probable result of a blow with the fist, it seems that no intent to kill will, under ordinary circumstances, be presumed though death results from an assault thus committed. But it has been held in many cases that an assault without a weapon may be attended with such circumstances of violence and brutality that either malice or an intent to kill will be implied. Anno. 15 A. L. R. 675, 24 A. L. R. 666. In *State* v. *John,* 172 Mo. 220, 72 S. W. 525, 95 Am. St. Rep. 513, the defendant struck deceased once on the jaw with his fist causing deceased to fall, striking his head on the pavement and resulting in his death. The court sustained the conviction for murder in the second degree and said: ''The court properly instructed the jury that a man is presumed to intend the natural and probable consequences of his acts. .... A strong, brawny man will not be allowed to approach an unoffending citizen in a public highway and deal him a deadly blow with his fist in a vital part, and when death, the natural consequence of his act, ensues, be heard to say that he merely intended to punish him, and not to kill him.''

In *Ballentine* v. *State,* 198 Ark. 1037, 132 S. W. 2d 384, also cited by appellant, the defendant knocked deceased down with his fists and then kicked and stamped him to death. A conviction for murder in the second degree was sustained and it was held that the evidence was sufficient to have supported a conviction for murder in the first degree. The court said: ''Murder in the first degree is defined by statute, § 2969, Pope's Digest, as 'all murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate, malicious and premeditated killing, or shall be committed, in the perpetration of or in the attempt to perpetrate,' certain crimes named. The statute then says, § 2970, Pope's Digest; 'All other murder shall be deemed murder in the second degree.' We have many times held that actual intent to take life is not a necessary element of the crime of murder in the second degree. *Brassfield* v. *State,* 55 Ark. 556, 18 S. W. 1040; *Byrd* v. *State,* 76 Ark. 286, 88 S. W. 974. Malice, however, is a necessary element of murder, either in the first or second degree, and it must be either express or implied. Section 2967 provides: 'Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing manifest an abandoned and wicked disposition.' ''

Since a specific intent to kill is not an essential element of second degree murder under our decisions, the real question here is whether the killing was done with malice, express or implied. The trial court fully instructed the jury on all degrees of homicide and upon the issue of malice, which is a question of fact to be determined by the jury from all the circumstances in·the case. Wharton on Homicide (Third Ed.) § 104. The jury was warranted in finding that appellant made repeated violent attacks upon a much older man who offered no resistance whatsoever, but attempted to avoid each difficulty. It was for the jury to determine whether considerable provocation appeared or whether the circumstances of the killing manifested an abandoned and wicked disposition on the part of appellant. There is ample evidence to support the conclusion of the jury on

this issue. It follows that the evidence is sufficient to support the judgment and that the trial court correctly refused appellant's Requested Instructions 2, 3 and 5.

It is next contended that the trial court erred in overruling appellant's motion for continuance in which he alleged that court was not properly in session for the reason that: (1) "Said term of court is an adjourned term, and the same failed when said court opened another term of court in the same county in this same circuit," (2) "Court is in session in the Osceola District of the same county, in the same circuit, and two terms of court cannot be in session in the same county at the same time," and (3) "That the order of adjournment was not made according to law." The proof on the motion discloses that June 1, 1949, was an adjourned day of the regular April, 1949, term of court, and that on April 15, 1949, the clerk, at the direction of the circuit judge, entered an order adjourning court until June 1, 1949. There is an absence of proof that court was in session in the Osceola District of the same county at the time complained of. In fact, the evidence is to the contrary. Insofar as the record here discloses, the holding of court in the Chickasawba District of Mississippi County at Blytheville did not in any way interfere with the holding of any other court. Therefore, the court was properly in session under the provisions of Ark. Stats. (1947), §§ 22-311, 22-312. *Thomas & Carter* v. *State,* 196 Ark. 123, 116 S. W. 2d 358.

It is next argued that the court erred in reinstructing the jury as to the different degrees of homicide and that the court's instruction as to the propriety of reaching a verdict was calculated to coerce the jury. After deliberating for a time, the jury reported at 4:50 p. m. that they were divided 10 to 2 and understood the evidence and instructions. The court instructed the jury as to the propriety and importance of reaching a verdict and no objection was made to the instruction given. At 5:50 p. m. the jury reported agreement on the question of defendant's guilt, but that they were unable to agree on the degree of the offense or the punishment, whereupon the court excused the jury for dinner. Upon re-

convening at 7:00 p. m. the court proceeded to reinstruct on the different degrees of homicide in order that the jury might be enabled, if possible, to determine the degree of offense. Appellant duly objected to "reinstructing the jury on the same issues that have already been given." After the jury had retired, appellant objected to the following instruction: "This case has been pending in this Court since the 26th day of October, 1948. We have spent a day and a half in the trial of it. Eventually it is going to have to be settled by a jury of citizens of this District of the County. As I indicated before, I don't expect any juror to forego or give up any fixed or firm opinion he may have after hearing the testimony in the case, but a juror ought not to have such pride of opinion that he is unwilling to reason with his fellow jurors and try honestly to reach a verdict. A juror ought to be an open-minded man—open to conviction. And he ought to hear, patiently and considerately, the arguments of his fellow jurors. And it is possible that one of them may be able to call to his attention some part of the evidence overlooked by him, and if you are an open-minded man, when it has been called to your attention it might be such as to convince you. The only purpose we have here is to try and determine what is right and to do what is right under the law and the evidence.

"You gentlemen have indicated to me that there is no disagreement among you as to what the evidence shows, and I have tried to make the several degrees of homicide plain to you. Now it is a proposition of applying the evidence to the law and writing a proper and righteous verdict in accordance with the instructions that have been given to you by this Court.

"In view of the time that we have taken in the trial of this case, and the expenses necessary in the trial of any case of this character, I am going to ask that you gentlemen again return to the jury room and try, if possible, to reach a proper verdict in this case." The jury returned a verdict at 9:45 p. m.

The trial court did not err in reinstructing on the degrees of homicide after the jury reported agreement

on the question of defendant's guilt as to some offense. It is within the province of the presiding judge to give further instructions when, in the exercise of proper discretion, he regards it necessary to do so in the furtherance of justice, and it is not always necessary in such cases that he should repeat the whole charge. *Pless* v. *State,* 102 Ark. 506, 145 S. W. 221; *Harrison* v. *State,* 200 Ark. 257, 138 S. W. 2d 785. Since the court only reinstructed on the issues upon which the jury had not agreed, there was no abuse of discretion in doing so without repeating the whole charge.

We do not agree with appellant's contention that the language of the instruction above stated tended to coerce the jury. This court has repeatedly held that the trial court may detail to the jury the ills attendant upon a disagreement, the expense, the length of time the case has been pending, the length of time it has taken to try the case, and that the case will have to be decided by some jury and in probability upon the same testimony. *Stepp* v. *State,* 170 Ark. 1061, 282 S. W. 684, and cases there cited. We have also held that it is proper for the trial court to warn the jury to lay aside pride of opinion and consult with each other for the purpose of harmonizing their views, if possible, under the evidence, and that it is their duty to apply the law as given by the court to the facts and deal with each other in a spirit of candor in order to arrive at a verdict. *Jackson* v. *State,* 94 Ark. 169, 126 S. W. 843; *Mallory* v. *State,* 141 Ark. 496, 217 S. W. 482; *Benson* v. *State,* 149 Ark. 633, 233 S. W. 758; *Murchison* v. *State,* 153 Ark. 300, 240 S. W. 402; *Clarkson* v. *State,* 168 Ark. 1122, 273 S. W. 353. We find nothing in the remarks of the court calculated to unduly influence the jury or to operate as an invasion of the province of the jury, and similar instructions have been approved in many cases. Nor do we agree that the language, ''A juror ought to be an open-minded man—open to conviction,'' would be interpreted by an intelligent juror to mean that any juror holding out for anything besides a conviction of the defendant was not doing his duty.

We have examined other assignments of error in the motion for new trial and find them to be without merit. It is our conclusion that the record is free from prejudicial error and the judgment is, therefore, affirmed.