Christopher DONOVAN *v.* STATE of Arkansas

CA CR 88-93                                    764 S.W.2d 47

Court of Appeals of Arkansas
Division I
Opinion delivered January 11, 1989

*Robert S. Blatt*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant, Christopher Donovan, was convicted of manslaughter and sentenced to serve nine years in the Arkansas Department of Correction.

The record shows that on the afternoon of Saturday, May 2, 1987, appellant and Karla Denise Davis, a woman with whom he lived, went to a gathering of friends where they drank beer, played pool, and rode horses. Late in the afternoon, Chris and Karla went home.

Appellant testified that he wanted to go to sleep but Karla kept pestering him, so he went out to the camper van and lay down. He said a short time later Karla came out to the van with a shotgun and threatened him, but he did not consider it a real threat because she had played around like that before. He testified that he said he was going to sleep and she said, "Well, go in the house to sleep." He went into the house but, according to appellant, before he was able to get to sleep, Karla became very agitated and started throwing things at him and breaking dishes, pictures, and other things. When she picked up the television and started to throw it on the floor, he grabbed it and they began to wrestle over its possession. Appellant testified that he pushed Karla aside with one arm and she fell. He replaced the television on its stand, then kicked Karla's foot and told her to get up. He then realized her eyes were filmed over, and she was seriously hurt. He tried to call 911 but did not get the number, so he carried Karla to the porch and began to give her mouth to mouth resuscitation.

A friend of Karla's, Sandra Crittenden, testified that on the day of the occurrence Karla called her, said something had happened, and she was coming to Sandra's house. Sandra called Karla ten to fifteen minutes later and appellant answered. He told Sandra to get her husband and come quickly because Karla was badly hurt. There was testimony that Bob and Sandra Crittenden arrived about five minutes later to find appellant cradling Karla in his lap on the porch. Bob Crittenden, who was an emergency medical technician, immediately began to administer cardio-pulmonary resuscitation but testified it was his opinion that Karla was already dead.

Dr. Fahmy Malak testified that Karla had suffered a square-shaped bruise on the right side of her neck which appeared to have been made with a belt buckle, a bruise on the left side between the ear and the lower jaw which was consistent with a blow made by a fist, and bruises on her back which were consistent with being stomped with a shoe. He testified that the cause of death was swelling of the brain and bleeding into the skull caused by the blows to the left and right sides of the head and neck.

Appellant was charged with first degree murder and the jury found him guilty of manslaughter. His first argument is that his right under the fifth and fourteenth amendments of the United States Constitution not to testify or have that fact called to the attention of the jury, was violated when he was required, during jury selection, to read his list of witnesses and thus disclose his intention to testify or not.

It is well settled that a defendant has the right to remain silent during his trial without this being called to the attention of the jury. In *Russell* v.*State*, 240 Ark. 97, 398 S.W.2d 213 (1966), the trial court, over the objections of defense counsel, told the jury that the accused had the right to testify or not to testify and that his failure to do so was not evidence of guilt and was not to be considered by the jury. The appellate court reversed, stating:

> This is a familiar instruction. When the accused *asks* that such a charge be given it is reversible error for the court to deny the request. *Cox* v. *State*, 173 Ark. 1115, 295 S.W. 29 (1927). When, however, the accused *objects* to such an instruction, a different situation is presented. Our decisions on the point have not been entirely harmonious. We

held in *Watson* v. *State*, 159 Ark. 628, 252 S.W. 582 (1923), that the giving of the instruction was prejudicial error, but we took the opposite view in *Thompson* v. *State*, 205 Ark. 1040, 172 S.W.2d 234 (1943). Upon reconsidering the question we have concluded that the instruction ought not to be given against the wishes of the defendant. If the accused is to have the unfettered right to testify or not to testify he should have a correlative right to say whether or not his silence should be singled out for the jury's attention.

240 Ark. at 100 (emphasis in the original).

This type of instruction was again held to be reversible error in *Mosby & Williamson* v. *State*, 246 Ark. 963, 440 S.W.2d 230 (1969), where the Arkansas Supreme Court said:

One of appellants' objections relates to the giving of an instruction with reference to the fact that neither of the two accused appellants took the witness stand during the joint trial. The court gave the familiar or somewhat standard instruction that:

"A defendant may or may not testify in a case at his own discretion. The fact that a defendant did not testify is not evidence of his guilt or innocence and in fact is no evidence at all and is not to be considered by you in arriving at your verdict."

246 Ark. at 964. After discussing the opinion in *Russell, supra*, the court concluded:

Therefore, we must hold that in the circumstances the giving of this instruction, to which appellants objected, constituted prejudicial error.

246 Ark. at 965.

After being retried and convicted a second time, appellant Mosby again appealed to the Arkansas Supreme Court, *Mosby* v. *State*, 249 Ark. 17, 457 S.W.2d 836 (1970), complaining that the trial court had improperly commented on his right not to testify. During voir dire, the trial court told the prospective jurors:

"There have been numerous questions propounded to the

jury. The court will, at the conclusion of the case, instruct the jury as to the law of the case. One of the instructions will be concerning the situation that the defendant did testify and in the event he didn't testify concerning that situation."

249 Ark. at 21. The appellate court held that this comment impinged upon the appellant's right of choice about testifying and that it denied him the "unfettered correlative right to freely determine whether such an instruction should be given." Again his conviction was reversed.

In *Munn* v. *State*, 257 Ark. 1057, 521 S.W.2d 535 (1975), a deputy clerk asked that the defendant stand and be sworn with the rest of the witnesses. Defense counsel objected stating that the defendant had a right to be sworn at a later time, to which the judge replied, "Sure. Sure. He doesn't have to take the stand at all if he doesn't want to." In reversing the conviction, the appellate court relied upon *Russell* and *Mosby* and stated that "the appellant's right to testify or not to was brought to the jury's attention by the court." 257 Ark. at 1059. *See also Harris* v. *State*, 260 Ark. 646, 543 S.W.2d 459 (1976).

In *Newberry* v. *State*, 261 Ark. 648, 551 S.W.2d 199 (1977), the court inquired if defense counsel wanted to have his client sworn with the rest of the witnesses. Counsel did not answer directly but asked to make a motion and, out of hearing of the jury, requested a mistrial which was denied. On appeal, Newberry relied on the *Munn* case, *supra*; however, the court found the cases significantly different because in *Munn* there was a positive assertion which brought to the jury's attention the defendant's right to testify or to remain silent while in *Newberry* the court's routine inquiry did not do this and, even if error, it was harmless.

More recently, in *Hunter* v. *State*, 280 Ark. 307, 657 S.W.2d 543 (1983), the court considered this issue in a factual situation similar to that in the case at bar. The court explained:

The second argument concerns the court's remarks in asking the appellant to list his possible witnesses. When the court asked for the names of appellant's witnesses an objection and request for a mistrial were made. The

argument is that such comment might well have implied that the burden of proof was shifted to the appellant and further that such comment infringed on appellant's right to remain silent. The jury was subsequently instructed that the defendant had an absolute constitutional right not to testify. This instruction was given at the request of appellant's attorney. We think the present situation is analogous to the case of *Newberry* v. *State*, 261 Ark. 648, 551 S.W.2d 199 (1977). In *Newberry* the trial court asked defense counsel if he wished to have his client sworn at the time other witnesses were administered the oath. A motion was made for mistrial and refused by the court. On appeal we held that even if such procedure were error it was harmless. We adhere to the same principle in the present case.

280 Ark. at 309.

All of the above cases were concerned with a trial judge's jury instruction, or comment in the presence of the jury, making some sort of reference to the defendant's right to testify, or not to testify, in the case. We are not discussing a situation where the reference was made by the prosecutor. *Compare Clark* v. *State*, 256 Ark. 658, 509 S.W.2d 812 (1974). The approach used in the situation presented by this case, as disclosed by the cases discussed above, seems to relate to the nature of the court's comment—whether the comment was a positive assertion as to the defendant's right to testify or whether the comment would only give rise to an inference in that regard. The case of *Pruett* v. *State*, 282 Ark. 304, 669 S.W.2d 186 (1984), also demonstrates that it is not only what was said, but when and how it was said, that enters into the determination of whether a prejudicial error has occurred. *See* 282 Ark. at 312.

■ We are not convinced that a prejudicial error has occurred in the present case. Although the matter could have been handled in a way that would have reduced the difficulty of our decision, what really occurred here is that the court required appellant's counsel to read a list of his witnesses; however, the court said nothing in regard to the appellant or whether he was to be included on that list if he was going to testify. Based upon the cases discussed above, we have concluded in this case that the trial judge's requirement that defense counsel read his list of wit-

nesses, without further comment by the court indicating reference to appellant, did not constitute reversible error.

Appellant's next argument is that the trial court erred when, after having fully instructed the jury, the court then gave the jury an additional definition of manslaughter. At the conclusion of the evidence, the judge, prosecutor and defense counsel retired to chambers where the jury instructions were discussed. They then returned to the courtroom and the judge read the instructions to the jury. After telling the jury that the appellant was charged with murder in the first degree, which included the lesser offenses of murder in the second degree, manslaughter and negligent homicide, the court said to sustain the charge of manslaughter:

> [T]he State must prove beyond a reasonable doubt that Christopher Donovan caused the death of Karla Davis under circumstances that would be murder except that he caused the death under the influence of extreme emotional disturbance, for which there was reasonable excuse.

When the judge completed reading the instructions, the prosecutor approached the bench and objected because there were alternative situations which could result in conviction of second degree murder or manslaughter which the judge had left out of the instructions he had read. Defense counsel objected to any repeated reading of the instructions, arguing that the prosecutor failed to object to the proposed instructions prior to the reading, and therefore, had waived any right to have the instructions repeated or modified; that it would be highly prejudicial to have the judge repeat only two instructions and place undue emphasis on those two offenses; and that the instructions were correct as read. The court overruled defense counsel's objection but did repeat all the offense instructions and added to the manslaughter instruction the law involved if appellant was found to have "recklessly" caused the death of Karla Davis. On appeal, appellant argues that the additional instruction on manslaughter was reversible error. We do not agree.

In the first place, we believe the additional manslaughter instruction was legally correct. The court had instructed in the terms of AMCI 1504(a) which allows the jury to find a defendant guilty of manslaughter if the death was caused under circumstances that would be murder except for the fact the defendant

had acted under the influence of extreme emotional disturbance for which there was reasonable excuse. The "Note on Use" which follows the text of AMCI 1504 suggests that paragraph (a) would ordinarily be used where the offense is a lesser included offense to a murder charge; however, the Note does not suggest that it would be improper to also instruct on manslaughter as a lesser included offense where there is evidence that the defendant may have *recklessly* caused the death. Indeed, in *Williams* v. *State*, 17 Ark. App. 53, 702 S.W.2d 825 (1986), this court reversed because the trial court failed to instruct the jury on manslaughter (as a lesser included offense of a murder charge) when there was evidence from which the jury could have found the defendant *recklessly* caused the victim's death. That term is defined in Ark. Code Ann. § 5-2-202(3) (1987) as follows:

> A person acts recklessly with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

*See also Williams* v. *State, supra.*

In the present case, the appellant testified that Karla's death resulted from a fall caused when he pushed her while they were wrestling over possession of the television set. There was other evidence, however, from which the jury could have found that the appellant used such force on Karla that he was guilty, at least, of recklessly causing her death. We find the additional manslaughter instruction legally correct under the evidence in this case.

The additional instruction relating to manslaughter where death is caused by reckless conduct was given to the jury before closing arguments were made. Although the appellant argues that the instruction was unduly emphasized when the court did not repeat *all* the instructions, we do not agree. We do agree that additional instructions must be used with care. The case of *Hicks* v. *State*, 225 Ark. 916, 287 S.W.2d 12 (1956), cited by appellant, makes it clear that it is preferable to settle the instructions in chambers. Moreover, *Rush* v. *State*, 239 Ark. 878,

395 S.W.2d 3 (1965), shows the danger of giving new or repeated instructions after jury deliberations have begun. However, in *McGaha* v. *State*, 216 Ark. 165, 224 S.W.2d 534 (1949), the court said:

> The trial court did not err in reinstructing on the degrees of homicide after the jury reported agreement on the question of defendant's guilt as to some offense. It is within the province of the presiding judge to give further instructions when, in the exercise of proper discretion, he regards it necessary to do so in the furtherance of justice, and it is not always necessary in such cases that he should repeat the whole charge. [Citations omitted.]

216 Ark. at 171-72. Also, in *Wood* v. *State*, 276 Ark. 346, 635 S.W.2d 224 (1982), the court said:

> It is within the province of the presiding judge to recall the jury and [give] them further instructions when, in the exercise of a proper discretion, it is necessary to do so in the furtherance of justice. *Harrison* v. *State*, 200 Ark. 257, 138 S.W.2d 785 (1940). It is not always necessary in such cases that he should repeat the whole charge. *Harrison* v. *State, supra.*

276 Ark. at 349. Furthermore, Rule 33.4 of the Arkansas Rules of Criminal Procedure provides, in part, as follows:

> (d) The judge may recall the jury after it has retired to deliberate and give it additional instructions in order to:

> (i) correct or withdraw an erroneous instruction;

> (ii) clarify an ambiguous instruction; or

> (iii) inform the jury on a point of law which should have been covered by the original instructions.

> (e) Should additional instructions be given, the judge in his discretion may allow additional argument by counsel.

While *McGaha* and *Wood, supra,* approved additional instructions under situations where the *jury* had requested the instructions, and the appellate court found no error since the jury had indicated it understood all the other instructions, both

opinions specifically state that it is not always necessary to repeat all the instructions. Both opinions also say that additional instructions may be necessary in the furtherance of justice, and both opinions recognize that the real problem is the proper exercise of the trial court's discretion.

Because the additional manslaughter instruction was supported by the evidence, was given after the other instructions were given and before the closing arguments were made, and was authorized by both case law and Ark. R. Crim. P. 33.4(d), even if the jury had retired to deliberate, we find no abuse of the court's discretion in giving the additional instruction in this case.

Affirmed.

CORBIN, C.J., and COOPER, J., agree.